## Zimmerman *versus* Streeper *et al.*, Executors of Streeper.

1. Streeper held a bond against Zimmerman ; he endorsed on it, " I request my executors to give this bond to Anna for her great kindness she has shown to me and her grandmother," this was signed and sealed : after it was written, " This is not to interfere with what I will to her, this she is to have beside that." Anna was the granddaughter of the obligee and the wife of the obligor. The bond was not delivered to Anna but remained in the obligee's possession with his other securities till his death. *Held*, that the bond did not pass to Anna.

2. The endorsement indicated a prospective gift ; there being no delivery it was without operation.

3. Wentz *v.* De Haven, 1 S. & R. 316, distinguished.

January 19th 1874. Before AGNEW, C. J., MERCUR and GORDON, JJ. SHARSWOOD, J., at Nisi Prius.

Error to the Court of Common Pleas of *Montgomery county :* Of January Term 1873, No. 270.

In the court below, Leonard Streeper, John B. Meyer and

[Zimmerman *v.* Streeper.]

Caroline Dager, executors, &c., of George Streeper, deceased, brought an action of debt against Lorenzo D. Zimmerman ; the writ was issued April 8th 1872.

On the 3d of January 1873, a case stated was filed, viz. : "The above-stated suit is brought to recover the amount of a bond with interest, executed by the defendant to George Streeper, dated the first day of April, A. D. 1864, conditioned for the payment of the sum of five hundred dollars to the said George Streeper, April 1st 1865, with interest at the rate of five per cent. per annum.   On the bond, in the handwriting of George Streeper, the obligee, is the following endorsement :—

"'July 22d 1864.   I request my executors to give this bond to Anna Meriah Zimmerman for her *grate* kindness that she shown to me and her grandmother."      GEORGE STREEPER, [L. S.]
                                   GEORGE STREEPER.
this is not to *interfar* with what *i* will to her this she is to have beside that.                    GEORGE STREEPER.'

"This bond, so endorsed, was never delivered to the said Maria Zimmerman, nor to the said defendant, but remained in the possession of the said testator, was so in his possession at the time of his decease, and was found by his executors among his other papers and securities.   George Streeper died September 10th 1864, leaving a solvent and ample estate.

"On the third day of August, A. D. 1864, George Streeper made his last will, in which, after providing for the payment of his debts, &c., and for his widow a life estate in all his property, he devised a tract of land to his son Leonard, subject to the payment of certain legacies, two houses and certain lots in Norristown to his daughters Caroline Dager and Margaret Moyer, and twenty acres of land in Springfield township to Leonard Streeper, Caroline Dager, and Margaret Moyer.   The residue of his estate he bequeathed to the said Caroline Dager and Margaret Moyer, in the proportions in said will mentioned, and of his will made the plaintiffs the executors, who on the 17th of September, A. D. 1864, proved the same, and letters testamentary thereon were issued to them.

"Two of the executors, to wit, Leonard Streeper and Caroline Dager, have signed the following paper :—

"'B. E. CHAIN, Esq.

"''Please hand over to Anna Maria Zimmerman the bond assigned by George Streeper in his life-time to her, which he held against Lorenzo D. Zimmermann for $500.      CAROLINE DAGER.
          Executrix of the Will of George Streeper, deceased.
                    Norristown, Pa., Nov. 27th 1871.
                         LEONARD A. STREEPER,
          Executor of the last Will of George Streeper, deceased."

[Zimmerman *v:* Streeper.]

" The following are facts in the case if considered legal evidence by the court, and if admitted to be considered as under exceptions on the part of the plaintiff.    If rejected, such rejection to be considered as under exception by the defendant.

" May 12th 1863, George Streeper, the testator and obligee in the bond sued upon, wrote to Lorenzo D. Zimmerman, who is the defendant and the husband of Anna Maria Zimmerman, in whose favor said endorsements on said bond are made, as follows :—

" ' Whitemarsh, May 12th 1863.

" ' My friend Lorenzo Zimmerman *i* have five hundred dollars to spare and if you stand in need of it you can have it, *i* have received more money than *i* expected to receive, if you do not want it may be some of your friends would want it, you can have it on a plain bond *i* shant want it very soon again.

Yours, most respectfully,

GEORGE STREEPER.'

" The testator frequently expressed to defendant that the bond was to be a gift through defendant to his wife Maria, for her kind attentions during life.    He was taken sick prior to July 22d 1864, and never recovered.    Maria Zimmerman, who is named in said endorsement on the bond in question, is the wife of the defendant, and is the granddaughter of the testator, George Streeper, the obligee in the bond, and is a *legatee* under his will, and had with her mother resided with the testator for a long time and until her marriage with the said defendant.    No claim was made for payment of the money due on the said bond until the year 1871, after the death of the said testator's widow.

" If, upon the foregoing facts, the plaintiffs are entitled to recover, then judgment to be entered in their favor for the amount of the principal of said bond, with interest thereon, according to law, from April 1st 1864, to date of entry of judgment.    If of a contrary opinion, then judgment for defendant."

The court (Ross, P. J.), after referring to the facts, delivered the following opinion : *   *   *

" Under these facts can a recovery be had upon the bond?    It must be remembered that the endorsement is not intended to release the defendant, the obligor, from his liability upon the bond.    If it has any effect whatever it is to make a gift of the bond to Mrs. Zimmerman.    This fact must not be overlooked or disregarded, for it underlies the case and determines the law which governs the facts in the case stated.    To constitute a valid gift *inter vivos* certain essentials are requisite, and the first inquiry that presents itself is whether the endorsement on the bond, undelivered to Mrs. Zimmerman, constituted a valid gift.

" To determine the validity of a gift, its subject-matter must be considered.    If capable of manucaption it must be actually or con-

[Zimmerman *v.* Streeper.]

structively delivered. If it be not, then it is still executory, and being without consideration, is bad either as a gift *inter vivos* or a *donatio causa mortis:* Yard *v.* Patton, 1 Harris 278 ; Kennedy *v.* Ware, 1 Barr 445 ; Whitehall *v.* Wilson, 3 Penna. 405 ; Jones *v.* Drake, 6 Phila. R. 416 ; Painter's Estate, 6 Wright 156, in note ; Cressman's Appeal, 6 Id. 147. A chose in action may, however, pass by assignment, for the debt itself cannot be delivered, and the only delivery that can be had must be of this character. A gift must be executed, for if it remains executory, and there be no consideration, it is void : Kennedy *v.* Ware, *supra.* In order to execute a gift of a chose in action, there must be a delivery of the evidence of the debt, or an assignment of it. ' A gift,' says C. J. Gibson, in re Campbell's Estate, 7 Barr 101, 'is a contract executed, and as the act of execution is the delivery of possession, it is of the essence of the title. It is the consummation of the contract, which without it would be no more than a contract to give, and without efficacy for the want of consideration. If made on a sufficient consideration, it would be a binding agreement; but then the nature of the contract would be changed, and there still would be no gift. The gift of a bond, note, or any other chattel, therefore, cannot be made by words *in futuro*, or by words *in præsenti*, unaccompanied by such delivery of possession as makes the disposal of the thing irrevocable.' This doctrine is cited and approved in Painter's Estate, *supra.*

" So strictly is the validity of a gift made dependent upon its execution that it was ruled in Pennington *v.* Gitting, 2 Gill and Johns. 209, that an intended gift by a parent to a child of certain bank stock, of which the certificate was handed to the contemplated donee, but no transfer of it was made on the books of the bank, which was the recognised mode of passing an interest in the shares, was executory, and could not be enforced. To the same purport are the cases of Duffield *v.* Elwes, 1 Bligh R. 529 ; Fortes *v.* Barret, 3 Mylne & Keen 36 ; Lonsdale *v.* Lonsdale, 5 Casey 407 ; Adams's Eq. 234, note.

" It is clear from these authorities that unless there be a delivery, either of the chose in action or the assignment of it, to the donee, the gift is not executed, and the donee acquires no right under it.

" But it is said that while the undelivered bond, with its endorsement, may not constitute a gift to the donee; yet it is in effect a declaration of trust which converts the executors into trustees of this fund for her benefit. It is said that an equitable assignment of a chose in action is a declaration of trust, with an agreement to permit the assignee to sue in the assignor's name : Butler's Coke Litt. 232, b. note 1. But how can this undelivered endorsement be termed an assignment? It never passed out of the control of the testator. It never conferred a complete and present right upon the assignee. It would unquestionably have been competent for

[Zimmerman v. Streeper.]

the testator at any time after he made these endorsements to have cancelled them. His power over the endorsements, up to the hour of his death, was complete and ample; and up to that hour the donee had acquired no rights. Yet the converse of all this is essential to constitute an assignment. *Vide* 3 Lead. Eq. Cases, H. & W.'s notes 361, where it is said, It is necessary, in order to constitute an assignment either legal or equitable, that there should be such an actual or constructive appropriation of the subject-matter assigned as to confer a complete and present right in the assignee, even when the circumstances do not admit of its immediate exercise. * * * The characteristic of an assignment is the relinquishment of all legal or equitable interest by the assignor, and the creation of a new and independent right in the assignee': Rogers v. Horsach, 18 Wendell 319; Cowperthwaite v. Sheffield, 3 Comstock 243. 'If the donor has perfected his gift in the way in which he intended, so that there is nothing left for him to do, *and nothing which he has authority to countermand*, the donee's right is enforced as a trust, and the consideration is immaterial': Adams' Eq. 233. A delivery, then, of the bond, with the endorsement, was essential to vest rights in the donee. Until that was effected the testator had done nothing to relinquish his legal or equitable interest. The whole matter was yet in his power and subject to his control. He could have cancelled the endorsements without prejudice to any legal or equitable right of his intended beneficiary. It is well settled that nothing can take effect as an assignment which does not manifest an intention to relinquish the right of dominion on the one hand and create it on the other : 3 Leading Eq. Ca. 363; Dickinson v. Phillips, 1 Barb. 454; Rogers v. Horsach, *supra*; Hall v. Jackson, 20 Pick. 194. This doctrine is thoroughly sustained by our own authorities. In Lonsdale v. Lonsdale, 5 Casey 407, it was ruled that an assignment of choses in action *under seal*, without valuable consideration, designed to take effect at the death of the assignor, where such choses in action were not delivered until after the assignor had become insane, passed no title to the assignee. This would seem to rule the point now under consideration. The same question was ruled by Judge Chapman in Jones v. Drake, 6 Phila. R. 417, in an able and elaborate opinion. *Vide* also Grant v. Levan, 4 Barr 324; Critchfield v. Critchfield, 12 Harris ; Plumstead's App., 4 S. & R. 545.

"If then this endorsement was without consideration, not having been delivered, it passes no title to the donee. In order to avail herself of it she must show it to have been made upon a sufficient consideration. The next inquiry, therefore, is, was the endorsement made upon a sufficient consideration ?

"It is said that the seal imports a consideration, and that, from the sealing of the endorsement, the law presumes it to have been made upon sufficient consideration. 'It is not now to be doubted,'

says Bell, J., in Yard *v.* Patton, 1 Harris 285, 'that though a parol unexecuted promise to make a gift *inter vivos* without consideration, is void, an agreement under seal to do so may be enforced as a legal obligation.' *Vide* Campbell's Estate, 7 Barr 100; Mack's App., 18 P. F. Smith 233; Shink *v.* Endress, 3 W. & S. 256; 1 Johns. Ch. Rep. 329.

" But in all these cases it will be found that the sealed instrument *was* delivered to the donees. If delivery had been proved in this case, I should, in consequence of the endorsement being under seal, have no difficulty in concluding that the seal imported a sufficient consideration. But as there was no delivery, the fact that it is under seal does not establish the existence of a consideration. This is squarely ruled in Lonsdale *v.* Lonsdale, and that authority renders further elaboration on this point superfluous.

" But failing the import of consideration derived from the attachment of the seal, how or by what means do the facts in the case establish it? The endorsement by its own terms purports to be made 'for her grate kindness that she shown to me and her grandmother.' This expression excludes the idea that any valuable consideration was the moving cause for the endorsement. Kindness and filial devotion are not the subjects of a *quantum meruit*. The natural love and affection of a grandparent for his grandchild, when that grandchild had been attentive and affectionate to him and his wife in their declining years, would seem to have induced the testator to make the endorsement upon the bond. But these are not sufficient considerations upon which to enforce a gift *inter vivos*. For this there is abundant authority: Yard *v.* Patton, Kennedy *v.* Ware, Whitehill *v.* Wilson, *supra;* Short *v.* Shultz, 7 Watts 207; Mack's Appeal, *supra;* Lyon *v.* Marclay, 1 Watts 271; Campbell's Est., *supra;* 18 Johns. 145.

" The only adjudicated case in Pennsylvania, which intimated a contrary doctrine, was Wentz *v.* De Haven, 1 S. & R. 312, but that was upon a dictum of Lord Mansfield. But upon that point it is distinctly overruled in Kennedy *v.* Ware and Campbell's Est., *supra*, and can be regarded as no authority.

" But it is said that there was a moral obligation which will support the endorsement by affording a sufficient consideration. A moral obligation which will support a promise to pay or to give has a distinct legal character. A moral obligation is not a vague or undefined claim arising from nearness of relationship, but it is an imperative duty which would be enforced at law, or in equity, were it not for some positive rule, which, with a view to a general benefit, exempts the party in that particular instance from legal liability: Kennedy *v.* Ware, *supra*. Its nature is well illustrated in the case of a contract debt barred by the Statute of Limitations, the collection of which cannot be enforced by legal remedies, but which will support a subsequent promise to pay the debt thus tolled

[Zimmerman *v.* Streeper.]

by the statute. Where does the case stated show any imperative duty on the part of the testator to Mrs. Zimmerman? She must show, in order to enforce the endorsement, that there was a consideration or its equivalent in moral obligation; but nothing is established by the case stated except the executory gift. It is simply a case of an unexecuted intention to give at a future period, and is, therefore, under the authorities cited, void.

"It was not seriously contended upon the argument that the endorsements should be considered in the light of testamentary disposition, nor could that view be maintained. A testator can execute but one will which will speak after his decease, and this testator made his will sometime after the endorsement had been executed.

"The fact that two of the executors are willing to surrender the bond is not material; they cannot release assets of the estate, as executors; after the fund comes into their hands as legatees, they may in that character act as they believe justice and equity require.

"It is apparent from what has been said that the plaintiffs can recover upon these grounds.

"It may be questionable whether the defendant could have availed himself of the defence upon which the recovery of the bond was resisted.

"The bond was never cancelled, nor is it pretended that the testator made a gift of it to him. He unquestionably owes the sum secured by it, and the question is not as to his liability to pay, but as to whom the payment is to be made. I have, however, decided the main question in order that future litigation may be avoided.

"The whole case is well summed up by C. J. Gibson in Campbell's Estate, *supra :* "All agree that the possession was not parted with, and it cannot be disputed that his intentions might be abandoned and his directions countermanded. It was his property while he lived, and as the direction was a testamentary one, it became inoperative at his death. It was a mere authority which expired with him.

"And now, February 1st 1873, judgment is directed to be entered upon the case stated in favor of the plaintiffs for the principal of the said bond, with interest thereon at five per cent. from its date to the date of the institution of this action, and at six per cent. after that date."

The defendant took a writ of error, and assigned for error that the court erred in entering judgment for the plaintiffs on the case stated.

*G. N. Corson,* for the plaintiff in error.—The endorsement was a family settlement, which is looked on with favor by the courts:

[Zimmerman *v.* Streeper.]

Cressman's Appeal, 6 Wright 155; 2 Spence's Equity 909; Ellison *v.* Ellison, 1 White & Tudor's Leading Eq. Cases 324; Barton *v.* Wells, 5 Wharton 227; Perkins *v.* Gay, 3 S. & R. 331; Cann *v.* Cann, 1 P. Wms. 727; Stapilton *v.* Stapilton, 1 Atkyns 2; Stockley *v.* Stockley, 1 Vesey & Beames 29; Cary *v.* Cary, 1 Ves. 19; 1 Story's Eq. 1257; Jourdan *v.* Jourdan, 9 S. & R. 276; Lies *v.* Stub, 6 Watts 48. The disposition of the bond by the endorsement is acquiesced in by all interested, including two out of three of the executors, and the decedent's estate is solvent: 2 Blackstone 510; Heron *v.* Hoffner, 3 Rawle 396. The seal to the endorsement imported a consideration: Bunn *v.* Winthrop, 1 Johns. Ch. 329, 1 Bac. Abr. 165, "Agreement" F.; Wentz *v.* Dehaven, 1 S. & R. 316; Martin *v.* Mowlin, 2 Burrows 969; Coe *v.* Hutton, 1 S. & R. 408; Sherk *v.* Endress, 3 W. & S. 255; Ackla *v.* Ackla, 6 Barr 229; Yard *v.* Patton, 1 Harris 278; Drysdale's Appeal, 2 Id. 531; Mack's Appeal, 18 P. F. Smith 231. Streeper wrote the assignment in his last illness; it is *donatio causa mortis*: Gourley *v.* Linsenbigler, 1 P. F. Smith 347. The deed was complete, for the accident of his death alone prevented delivery: Weckett *v.* Raley, 2 Brown P. C. 386; Sibthorp *v.* Moxom, 3 Atk. 580; Eden *v.* Smyth, 5 Vesey 530; Gardner *v.* Gardner, 22 Wend. 535; 2 Story Eq. Jur., sect. 705, 706. The intention of the obligee is to control: Watters *v.* Bredin, 20 P. F. Smith 237; Vance *v.* Nogle, Id. 180; Walker *v.* Coover, 15 Id. 430; Yarnall's Appeal, 20 Id. 335. A construction of a will long acquiesced in estops: Hagerty *v.* Albright, 2 P. F. Smith 274; Bigelow on Estoppel, ch. 14–16; Follmer's Appeal, 1 Wright 124.

*B. F. Chain*, for defendants in error.

Judgment was entered in the Supreme Court January 26th 1874.

PER CURIAM.—We can discover in this case, nothing more than an intent on part of George Streeper to authorize his executors to deliver the bond in question, to the wife of the debtor in the bond after his death. There was no delivery; and no intention to deliver by George Streeper himself in his lifetime. The endorsement of the bond cannot operate as a release as in Wentz *v.* De Haven, for there the creditor actually delivered the bond to the debtor himself. The writing is not a trust nor assignment, but simply an intended or prospective gift, to be carried into effect by his executors. In the main we agree with the opinion of Judge Ross.                                          Judgment affirmed.