# James S. Livingood's Estate. Jacob S. Livingood's Appeal.

*Decedents' estates—Gift—Evidence.*

Decedent in his lifetime gave to his wife a mortgage and judgment bond which he held against his brother, directing her to deliver them to his brother. The securities were delivered to the brother, who returned them to decedent's wife, with a request that she should keep them for him. They were then placed in a box in which decedent kept his securities. Decedent repeatedly declared it to be his intention to forgive the debts for which they were given and, in a paper requesting his brother to make oath to a tax return, stated that the judgment and mortgage against his brother were satisfied. At the appraisement of decedent's estate, the brother objected to these securities being included in the inventory, but it was finally agreed between him and the other parties interested that they should be appraised as part of the estate without prejudice to the brother's right to prove that they were satisfied. *Held,* that the evidence was sufficient to sustain a finding that these debts had been forgiven by the decedent.

Argued March 8, 1895. Appeal, No. 89, Jan. T., 1895, by Jacob S. Livingood, from decree of O. C. Berks Co., dismissing exceptions to adjudication. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to adjudication.

On exceptions to the account of the executors of James C. Livingood, deceased, BLAND, P. J., found the facts to be as follows:

" 1. That on June 1, 1877, William H. Livingood, the accountant, executed and delivered to James C. Livingood, the decedent, a common bond conditioned for the payment of $5,000 on April 1, 1878, for a loan of that amount made by him from the decedent, and on the same day executed and delivered to the decedent a mortgage for $5,000 on certain real estate situate on the west side of North Sixth street, in the city of Reading.

" 2. That the said William H. Livingood paid the interest on said bond to April 2, 1887, and that no interest was paid on the same after that date.

" 3. That on January 11, 1886, the said William H. Livingood executed and delivered to James C. Livingood, the dece-

dent, a bond with warrant to confess judgment for $750, payable on January 11, 1887, to secure the payment of a loan of money of that amount, made by the decedent to the said William H. Livingood; that on September 30, 1889, judgment for the sum of $750 was entered in the court of common pleas of Berks county by virtue of said warrant, to No. 81 September Term, 1889.

" 4. That the said bond and mortgage for $5,000 mentioned in the first finding of fact, and the bond and warrant for $750 mentioned in the third finding of fact, were the securities given by William H. Livingood for the liabilities with which he has charged himself on the debit side of the account now before the court.

" 5. That James C. Livingood, the decedent, after he had received said bond and mortgage and said judgment bond from William H. Livingood, repeatedly declared it to be his intention to forgive the debts for which they were given. .

" 6. That James C. Livingood made his last will and testament on February 19, 1890, and immediately or within a short time thereafter, actually forgave the said debts of $5,000 and $750, evidenced by the said bond and mortgage and the said judgment bond, and directed his wife Catharine A. Livingood to deliver to William H. Livingood the securities which he held for the same ; and that in pursuance of said direction she, the said Catharine A. Livingood, did deliver into the possession and control of the said William H. Livingood the said bond and mortgage and the certificate of the entry of the judgment upon the said judgment bond and warrant in the court of common pleas of Berks county, to No. 81 September Term, 1889.

" 7. That the said securities having been delivered into the possession of the said William H. Livingood, he returned them to the said Catharine A. Livingood with a request that she keep them for him until he should call for them. That she received them back from William H. Livingood and held them as his bailee or agent until after the death of the decedent, when she placed them in a box in which the decedent kept his securities, and that they remained in said box with the securities of the decedent until the appraisement of his effects.

" 8. That William H. Livingood was present at the appraisement, and when his said bond and mortgage and the certificate

of his said judgment were found with the decedent's securities objected to their appraisement as assets of the decedent; and alleged that the debts had been forgiven and that he had evidence in writing of the fact. That it was then agreed between him and the other legatees present that the securities should be appraised as a part of the decedent's estate without prejudice to him, and that if he could furnish evidence of the forgiveness claimed, he should have the benefit of the fact.

" 9. That the written evidence of the forgiveness of the said debts is contained in a paper, duly proved in this case, of which the following is a copy :

" ' I do hereby request my brother William H. Livingood, who is my attorney-at-law, to make oath to the following statement as required by the act of assembly relating to taxes, to wit : Mortgages and money owing by

| | |
|---|---:|
| Henry Scholl | $5,500 00 |
| Jacob Zeller | 5,000 00 |
| Isaac Hoffman | 4,500 00 |
| Frank Filbert | 3,000 00 |
| Israel Gruber | 4,000 00 |
| Henry Bennetch | 7,000 00 |
| Michael Oxenrider | 300 00 |
| Daniel Yoder | 300 00 |
| | $29,600 00 |

" ' The judgment of seven hundred and mortgage of five thousand dollars against William H. Livingood is satisfied. Witness my hand this eleventh day of April, A. D. 1891.

" ' Witness present:           JAMES C. LIVINGOOD.
" ' CATHARINE A. LIVINGOOD.'

" 10. That the decedent intended to forgive and actually did forgive the debts of the said William H. Livingood, secured by the said bond and mortgage of $5,000, and the judgment for $750 entered in the court of common pleas of Berks county, to No. 81 September Term, 1889 ; and that from February 19, 1890, or very soon thereafter, until after the death of the decedent, the securities for the said debt were in possession of the said William H. Livingood, by direction from the decedent.

" The decedent was a very wealthy man, as fortunes are esti-

mated in our community. He had no children. According to Mr. Fogleman's testimony he had a strong affection for his brother William, and sympathized keenly with him in his distressing financial embarrassment which harassed him toward the close of decedent's life. It is quite natural therefore that he should have felt disposed to forgive his indebtedness. The evidence shows that there were other lien creditors of William H. Livingood to a large amount, and that is probably the reason why the mortgage and judgment were not satisfied. The policy of keeping them open, I conjecture, was William H. Livingood's and not the decedent's. It is the intention and conduct of the latter that I have to do with, and not that of William H. Livingood, beyond the fact of his willingness to accept the forgiveness of the debt. Of his intention to accept the benefit there can be no doubt; and the purpose of the decedent to confer it is clear beyond fair dispute. The estate of the decedent was his to do with what he pleased, so far as the exceptants are concerned; and if what he did in relation to the indebtedness of William, amounted to a valid gift of it to him, he is entitled to the benefit of it. In Zeigler v. Eckart, 6 Pa. 13, the facts were very similar to those of this case, and I think it a clear authority here, requiring me to hold that these debts were in law effectually forgiven to William by the decedent. It was there decided that the law presumes every legacy to be a clear gratuity, but that that presumption, like every other, may be rebutted by parol proof, and that for that reason a legacy to the testator's debtor is not per se a discharge of the debt; that as the presumption may be removed by extrinsic evidence, so may it be restored, and that the testator's declarations before, at, and after, the making of his will, that he did not intend the debt should be demanded, constitute a defense to an action for it by the executor. I have found as facts, the intention of this testator to forgive these debts, and his actual delivery to the accountant of the securities for them, and that the securities were in the possession of the accountant at the decease of the testator. The accountant is a legatee under the will of the decedent, and has the benefit of the presumption, that the testator intended his legacy should be a pure gratuity. While that presumption was temporarily overthrown by the fact that the securities were found in the box of the decedent,

with his other securities, I think it has been fully restored by the evidence showing the forgiveness of the debts and the delivery of the securities to the accountant.   Upon the facts as I have found them, Zeigler v. Eckert requires me to dismiss the exceptions, and they are accordingly dismissed, and the account is confirmed."

Exceptions to the adjudication were dismissed by. the court.

. *Errors assigned* were (1) in finding that the decedent intended to forgive the debts of William H. Livingood; (2) in allowing William H. Livingood, executor, credit in his account for the amount of them; (3) in confirming the adjudication absolutely.

*Isaac Hiester*, *Frank S. Livingood* with him, for appellant. Though a bond can be discharged by a parol gift accompanied by delivery of the bond, yet it is essential to the validity of such a discharge, (1) that there be words expressing a present gift; (2) that possession of the bond be constantly thereafter maintained by the donee if sui juris, and if the donor again has possession the gift becomes nugatory: Campbell's Est., 7 Pa. 109; Fross' App., 105 Pa. 258; Rhodes v. Childs, 64 Pa. 18; Cummings v. Meaks, 2 Pitts. 490; Dunbar v. Dunbar, 80 Me. 152.

Voluntary parol declarations by a creditor of an intention to release a debt do not extinguish it: Irwin v. Johnson, 36 N. J. Eq. 347; Reeves v. Brymer, 6 Ves. Jr. 517; Campbell's Est., 7 Pa. 100.

*Richmond L. Jones*, for appellee.—The debts represented or evidenced by the mortgage and judgment, held by the decedent in his lifetime, were forgiven and released by a surrender or delivery of the mortgage and judgment, as found by the court below: Com. v. Crompton, 137 Pa. 138; Bouvier's Law Dict., "Donation"; 2 Schouler's Pers. Prop. 254; 2 Bl. Com. 442; Story, Contr. p. 1; Kent Com., 12th ed. 449, note 6; Grover v. Grover, 24 Pick. (Mass.) 261; Carradine v. Carradine, 58 Miss. 286; Whitford v. Horn, 18 Kan. 455; 2 Kent Com. 439; Bond v. Bunting, 78 Pa. 210; Gray v. Barton, 55 N. Y. 68; Lee v. Boak, 11 Gratt. (Va.) 182; Moore v. Darton, 4 De G. & Sm. 517; Bishop on Contracts, sec. 50, note; Ellsworth v. Fogg,

35 Vt. 355; Draper v. Hitt, 43 Vt. 439; Larkin v. Hardenbrook, 90 N. Y. 333; Kekewich v. Manning, 50 Eng. Ch. 175; Michener v. Dale, 23 Pa. 59; Martin v. Funk, 75 N. Y. 134; Com. v. Crompton, 137 Pa. 138; Grover v. Grover, 24 Pick. 261; Bates v. Kempton, 7 Gray (Mass.) 382; Malone's Est., 13 Phila. 313; Reed v. Copeland, 50 Conn. 472; Peirce v. Burroughs, 58 N. H. 302; Pope v. Burlington Savings Bank, 56 Vt. 284; Howard v. Savings Bank, 40 Vt. 597; Fulton v. Fulton, 48 Barb. (N. Y.) 581; Faxon v. Durant, 9 Met. (Mass.) 339.

The decedent in his lifetime and. subsequently to the gift, having expressly omitted these obligations from his return to the assessor of the state taxes, upon the ground that they were satisfied, and that he was therefore not liable for the tax upon them, his executors are estopped from claiming them in the courts of the commonwealth. Malone's Est., 13 Phila. 313; Cook's Executors v. Grant, 16 S. & R. 211.


PER CURIAM, April 1, 1895:

The evidence in this case is singularly free from conflict, presenting no questions of credibility. The learned counsel for the appellants has presented one view of its effect with great clearness and force. The learned orphans' court however inclined to the opposite view of it. We have examined the testimony carefully and are satisfied that it fairly sustains the findings of fact drawn from it by the learned judge of the orphans' court.

From these findings the decree follows logically and is now affirmed.