# Samuel Davidson, Executor of Reuben Young, Appellant, *v.* Isaac L. Young.

*Judgment—Issue to determine validity of judgment—Parol evidence*

On an issue between an executor and a son of testator to determine the validity of a judgment against the son in favor of testator, the case is for the jury where the parol evidence on behalf of plaintiff tends to show that at the time the judgment was given it was verbally agreed that it was merely to secure the father's support in case he met with reverses, and that no portion of it was ever to be collected unless he needed it for that purpose.

In such a case it is not improper for the court to charge the jury that "if the parties entered into that arrangement, although there was no fraud, accident or mistake, and Reuben Young or his executor afterwards undertook to use the bond for a purpose that was not contemplated, and contrary to the agreement of the parties at the time the bond was executed, then we say that the defendant would be entitled to recover, for that would be a fraud."

Argued March 22, 1895. Appeal, No. 261, Jan. T., 1895, by plaintiff, from judgment of C. P. Bradford Co., Sept. T., 1889, No. 708, on verdict for defendant. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Affirmed.

Feigned issue to determine the validity of a judgment in favor of Reuben Young against his son, Isaac L. Young. Before PECK, P. J.

At the trial it appeared that on December 14, 1875, Isaac L. Young gave to his father Reuben Young a judgment bond for twenty-one hundred dollars. The bond was for the unconditional payment of the twenty-one hundred dollars on or before December 14, 1895. Defendant claimed that the bond was given under an agreement that it should be used only as security for the support of Reuben Young and wife, and that it should be used for no other purpose.

Benjamin F. Young, a son of defendant, being on the stand, counsel for defendant made the following offer:

"We propose to prove by the witness on the stand that after the bond in this case was prepared and before the same was executed that he was present at a conversation, was present when there was a talk between his father and his mother and

Reuben Young in regard to what Reuben Young would do in case his son would execute that bond. That the mother of the witness objected to her husband signing this bond, and that Reuben Young then said to Isaac L. Young, the defendant, that if he would sign that bond that it should only be held against him for the support of Reuben Young and his wife. That Isaac Young and his wife then said that with that agreement the bond would be executed. That within three or four days thereafter the witness heard another conversation between his mother and his grandfather in which his grandfather said that they had taken this bond just as he had agreed before its execution. That he took it to secure his support in case he should come to want and that no part of it was ever to be collected unless it was necessary for the support of the parents of the defendant; that he thought he had enough property to give him a comfortable support without ever requiring his son to pay any part of this bond, but he wanted to make it sure he would have enough to live on in his old age, or that in substance. That he had taken this bond under that agreement.

" To be followed by other witnesses who will testify that Reuben Young told them that this bond had been given to him by Isaac to secure his support in case he should come to want. That it was the understanding between them that no part of it was ever to be collected unless it was needed for that purpose."

The objection was as follows:

" 1. Counsel for plaintiff object to the offer as incompetent.

" 2. That it does not propose to show any parol agreement between Reuben Young and Isaac Young at the time of signing or the execution of the bond.

" 3. That the conversations or declarations of Reuben Young and Isaac Young before the bond was signed are incompetent, because it is presumed that every agreement or every conversation that they had before the signing of the bond was merged in it.

" 4. That the subsequent declarations of Reuben Young are incompetent as evidence, unless the verbal contract alleged was made at the time of the execution or signing of the bond."

By the Court: " Objection overruled and bill-sealed for plaintiff." [1]

Other offers of evidence of a similar character were admitted under objection and exception. [2–6]

The court charged the jury as follows:

" [The evidence offered upon the part of the defendant for the purpose of showing what took place at the time of the execution of the bond is by the evidence of witnesses, the first of which was that of Benjamin F. Young, who testifies as follows: ' We were at the breakfast table when grandfather came in, and he sat down and said that he had that fixed now where he could let father have that forty acres of land, and that he was going to deed it to him as he had agreed to do, and they talked awhile and finally he said he would have to ask a favor of him to give him a bond for his support, and he proposed to do the business that day; they said they would hitch up and go to Towanda, and they went. My mother said she would rather that he should keep it in his own hands than to give a bond, if he wanted to let them have the use of it to do so, and she did not think it advisable to give a bond.

" 'Q. What did your grandfather say to that, if anything? A. Why, he said it was all right; that there would be no harm in giving the bond. He said you will never have to pay anything on it unless I come to want and need it for my support and wife's, and then he said I shall ask you to pay something on it whenever we need it.'

" Now then, gentlemen, that conversation standing by itself, being before the execution of the bond, would not be sufficient to set aside the obligation, because when parties enter into a written instrument and execute it, in the contemplation of the law, they merge all former conversations and agreements into the written agreement; but there is something further in connection with this conversation. In a few days afterwards, from three days to a week, the grandfather of the witness (Reuben Young) came to Isaac Young's house and there had a conversation with Mrs. Young, Isaac Young being away at the time; as the reporter has it, ' Grandfather came over there and father was not there, and mother and him got to talking about it, and he said that they had made the arrangement just as they had talked, and mother did not really seem to fall in sympathy with it then, and he went on to explain to her that all he took that bond for was in case he should use up all the other prop-

erty that he had, and then he would want something to take care of himself with, so as not to be dependent on other people, and he told her she need not worry, that it would be all right just as he had said.'

. "Now then, gentlemen, it is for you to determine what Reuben Young meant when he said they had made the arrangement just as they had talked.   Does that refer to the conversation that they had had in the presence of Mrs. Young in which she had taken a part the morning of the execution of this bond ?   If it does mean that, then it would mean that the bond had been executed upon the conditions and terms which they had talked the morning before starting to Towanda, at Isaac Young's.] [9] . . . [But if you find from the evidence and declarations of Reuben Young that at the time that that bond was executed that it was agreed that he should hold it for his support, and that Isaac Young should not be called upon to pay anything upon it unless he came to want, and you are satisfied that this evidence upon which you find your verdict is of such character that it is clear, precise and satisfactory, then we say that you should find for the defendant.] [14]

Plaintiff's points were, among others, as follows:

" 1.   That inasmuch as no witness in this case has testified to having been present at the time of the signing or delivery of the bond in question, nor that he heard anything that was said, nor saw anything that was done at such time between or by either of the parties thereto, your verdict must be for the plaintiff.   *Answer :*   We refuse this point; we are of the opinion that the Supreme Court have never yet gone that far, unless we are mistaken, and if we are the Supreme Court will correct us and we shall be very glad to follow any indications that they shall give us." [17]

" 3.   The bond in this case is presumed to contain the whole contract between Reuben Young and his son, Isaac L. Young, and that all previous conversations and talks between the parties are presumed to have entered into and merged in the bond, and the jury must so find unless satisfied by clear and convincing evidence that another part of the agreement was in fact made at the time the bond was executed, but by fraud, accident or mistake was omitted from the writing. .   *Answer :*   We refuse to charge you as requested here.   If the parties entered into

that arrangement although there was no fraud, accident or mistake, if Reuben Young or his executor afterward undertook to use the bond for a purpose that was not contemplated and contrary to the agreement of the parties at the time the bond was executed, then we say that the defendant would be entitled to recover, for that would be a fraud." [18]

Verdict and judgment for defendant.   Plaintiff appealed.

*Errors assigned* among others were, (1–6) rulings on evidence, quoting the bill of exceptions; (9, 14) portions of the charge, as above; (17, 18) above instructions, quoting them.

*James Wood, William Maxwell* with him, for appellant.— Parol evidence was inadmissible to vary the written agreement: McKennan v. Doughman, 1 P. &W. 417; Cozens v. Stevenson, 5 S. & R. 420; Stine v. Sherk, 1 W. & S. 195; Rankin v. Simpson, 19 Pa. 471; McCue v. Johnson, 25 Pa. 306; Greenlee v. Greenlee, 22 Pa. 225; Blakeslee v. Blakeslee, 22 Pa. 237; Hart v. Carroll, 85 Pa. 510; George v. Bartoner, 7 Watts, 530; Hertzog v. Hertzog, 34 Pa. 418; Thorne, McFarlane & Co. v. Warfflein, 100 Pa. 519; Rearick v. Rearick, 15 Pa. 66; Miller's App., 107 Pa. 221; Frey v. Heydt, 116 Pa. 601; Phillips v. Meily, 106 Pa. 536; Jackson v. Payne, 114 Pa. 67; Greenawalt v. Kohne, 85 Pa. 369; Jessop v. Ivory, 158 Pa. 71; Honesdale Glass Co. v. Storms, 125 Pa. 278; Hoopes v. Beale, 90 Pa. 82; Walker v. France, 112 Pa. 203; Thomas & Sons v. Loose, Seaman & Co., 114 Pa. 35; Cullmans v. Lindsay, 114 Pa. 167; Spencer v. Colt, 89 Pa. 319.

*E. Overton*, for appellee, cited: Bown v. Morange, 108 Pa. 69; Sailor v. Hartzog, 2 Pa. 182; Arthur v. James, 28 Pa. 236; Baring v. Shippen, 2 Binn. 154; Ott v. Oyer's Exr., 106 Pa. 6; Cullmans v. Lindsay, 114 Pa. 167; Sickler's App., 2 Monaghan, 23; Renshaw v. Gans, 7 Pa. 117; Rearich v. Swinehart, 11 Pa. 233; Lippincott v. Whitman, 83 Pa. 244; Phillips v. Meily, 106 Pa. 543; Hoopes v. Beale, 90 Pa. 82.

PER CURIAM, April 1, 1895:

This feigned issue, awarded for the purpose of determining how much, if anything, was due upon the judgment in question,

depended on questions of fact which were exclusively for the consideration of the jury. It was fairly submitted to them in a clear and adequate charge in which there appears to be no substantial error. An examination of the record, with special reference to the assignments of error, has satisfied us that neither of them should be sustained. There is nothing in any of them that requires discussion. The evidence properly before the jury was quite sufficient to warrant them in finding in favor of the defendant.

Judgment affirmed.