## In re Estate of Rosina Schiehl.   Peter Schiehl's Appeal.

[Marked to be reported.]

*Evidence—Mortgage—Parol evidence to vary.*

Where a mortgage is given for money received, parol evidence is inadmissible to prove that the principal was not to be repaid, and that the interest was payable only during the mortgagee's life, unless it be accompanied by proof that the stipulation was omitted through mistake, fraud or imposition.

*Mortgage—Gift—Evidence—Decedents' estates.*

Among the effects of a decedent was found a mortgage executed by the decedent's sister, and duly recorded ten years before decedent's death. The proof was clear that the mortgagor not only paid the interest during most of that time, but also that the mortgagee required her to pay it. When the decedent died the mortgagor became executrix of the decedent's estate and claimed, as against decedent's husband, that the mortgage, or the money represented by the mortgage, had been given to her. The proof in support of the gift was founded exclusively upon loose and uncertain testimony of verbal declarations of the mortgagee, many of which were conflicting with each other, in some of which a gift or intended gift of the money, and in others a gift or intended gift of the mortgage, was asserted, and in others that the principal was never to be paid, but the interest, or so much as the mortgagee needed, was to be paid. *Held* (1) that there was not sufficient evidence to sustain a gift of the mortgage or of the money loaned; (2) that parol evidence, in the absence of mistake, fraud or imposition, was inadmissible to contradict the express terms of the written instrument.

Argued Oct. 28, 1896.   Appeal, No. 54, Oct. T., 1896, by Peter Schiehl, from decree of O. C. Allegheny Co., May T., 1895, No. 6, dismissing exceptions to adjudication.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Reversed.

Exceptions to adjudication.   Before OVER, J.
The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to adjudication.

*Joseph Breil*, for appellant.—The object of the act of 1848 was to protect the wife's estate from being incumbered or conveyed by her husband, or taken by his creditors against her

consent, and not to enable her to sell, incumber or give it away without his consent: Haines v. Ellis, 24 Pa. 253; Hinkle v. Landis, 131 Pa. 573.

A married woman may give her money or other property to her husband, but cannot give it to a stranger without the knowledge of her husband, or against his consent: Keene v. City, 8 Phila. 49; Towers v. Hagner, 3 Wh. 48; McGlinsey's App., 14 S. & R. 66.

A valid gift cannot be made by words in futuro unaccompanied by delivery of possession: Kidder v. Kidder, 33 Pa. 268; Zimmerman v. Streeper, 75 Pa. 147; Young v. Young, 7 Lanc. 145.

*Samuel A. Ammon*, with him *Frank Ammon*, for appellee.— Under facts in case at bar the gift was valid, even if there was not delivery of possession of the mortgage: Davidson v. Young, 167 Pa. 267; Livingood's Est., 167 Pa. 191; Zeigler v. Eckert, 6 Pa. 1; Kraus v. Stein, 173 Pa. 226; Nuding v. Urich, 169 Pa. 294; Abell v. Chaffee, 154 Pa. 257.

OPINION BY MR. JUSTICE GREEN, January 4, 1897:

The mortgage in question in this case was made in 1883 by the appellee Margaret Armbruster, to the decedent Rosina Schiehl, to secure the payment of $1,500. It was duly recorded and was in possession of the decedent during the remainder of her life, and at the time of her death. The mortgagor made many payments of interest on it during the decedent's life, and sold her some groceries which were to go on account of interest. At the death of the testatrix this mortgage was among her papers and constituted apparently a part of her estate. The mortgagor, having been appointed executrix of the will of the deceased, settled an account in which she did not charge herself with the mortgage, or the debt secured by it, and the appellant who was the husband of the decedent sought to surcharge her with the amount of the mortgage and interest due thereon. The auditing judge surcharged the accountant with the mortgage and interest, stating in his opinion that there was no sufficient evidence of the husband's consent to the gift. Upon exceptions filed, however, he changed his mind upon this subject, and held there was sufficient evidence of his assent, par-

ticularly after his wife's death, and thereupon the exceptions were sustained and the surcharge stricken out. It seems to us that the most important question in the case is, whether there was sufficient evidence of a gift at all to overcome the clear and undisputed title of the mortgagee. If there was a gift of the mortgage it must have been made in the lifetime of the mortgagee. There could be no such thing as a parol gift to take effect in the future after the death of the mortgagee. In point of fact the title claimed by the mortgagor was a title by gift, made at the time the mortgage was given. The obstacles in the way of that theory are of the most serious character. In the first place the mere fact that a mortgage was taken at all is entirely inconsistent with the theory that the money which the mortgage represented was intended to be given to the mortgagor. The mortgage was a solemn obligation under seal; it was recorded, and was a pledge of the real estate described therein for the security and payment of the debt. Moreover, in the second place, interest on the money was to be paid, and actually was paid by the mortgagor to the mortgagee during most of the time from the date of the mortgage in 1883 until the death of the mortgagee in 1893. The proof is very clear and entirely persuasive, that not only did the mortgagor pay the interest during all that time, but also that the mortgagee required her to pay it. Almost the whole of the testimony consisted of proof of declarations made by the mortgagee, and there was a great abundance of such testimony, showing that the mortgagee was constantly claiming the interest, and asserting that the mortgagor owed her interest, and that she had much difficulty in collecting it, and was obliged to take groceries in payment, for which she was charged double price by the mortgagor. For instance, Mrs. Rosina Rose, a disinterested witness, who lived only two doors from Mrs. Schiehl, and saw her every day, and was with her on Tuesday before she died on Monday following, testified that she asked her what she should do for her, "and she allowed she did not want anybody but Mr. Schiehl and me, and she allowed to me at that time that Mrs. Armbruster had borrowed $1,500 from her, and she had such a terrible time in getting the interest on it. . . . Q. Did she say anything else about her? Did she ever ask you to go for her sister, Mrs. Armbruster, to come over and watch her?

A. No, sir, I asked her through the week if my children ought to stop and tell her she was sick, and she allowed no; she did not want her near her, because she was always bothering her for a present of that mortgage, and she could not have it." Another witness, Mrs. Merkel, said "She often told me Mrs. Armbruster owed her $1,500; that she had loaned it to her, and that she could not get any interest, and she took it out in groceries." Mrs. Schultz, who kept a little grocery store two doors from Mrs. Schiehl, said of Mrs. Schiehl, " She came down and got a few little things of me, and she told me she could not buy much as she had to take all her groceries from her sister; that she loaned her money and she had to take the groceries on account of interest." Another witness, Isador Miller, testified that he knew Mrs. Schiehl, and had conversation with her about her money matters, and that "she told me one time her sister had loaned $1,500 from her, and she could not get any interest. . . . She said some time she wanted to come down and get some money from Mrs. Armbruster and she could get ·none. . . . She said she loaned her $1,500, and when she could come down to get some money she could not get some." Felix Merker testified, "she (decedent) said that her sister owed her $1,500, and that she could not get the interest, and she had to take it out in groceries." This was two or three months before her death. Mrs. Bauman said, " She talked to me and said her sister owed her $1,500 and would not pay her interest on it. . . . . She had said that repeatedly to me. . . . She just said when she went to get her money it made her mad that she would have to take everything in groceries."

There was more of this kind of testimony given by the exceptant, but it is not necessary to repeat it. It is absolutely at war with the fundamental theory of the accountant, which was that she was the owner of the mortgage by gift from the mortgagee. She was certainly not the owner in point of fact at any time. She never had it in her possession; it never was delivered to her, it never was assigned to her. The title of the mortgagee to the mortgage was never divested by any act of any kind, and it remained her own exclusive property up to the moment of her death. The mortgagor was to pay, and did pay, the interest on it, and the mortgagee constantly demanded the interest. and thereby asserted her ownership to the last.

Nor is it denied by the mortgagor that she was bound to pay the interest. In view of these manifest and uncontradicted facts the claim that the mortgagor was, during all this time, the owner of the mortgage, or of the debt which it was given to secure, is absurd and cannot possibly be sanctioned.

The title asserted by the mortgagor is of a very vague and indefinite character, founded exclusively upon the loose and uncertain testimony of verbal declarations of the mortgagee, many of which were conflicting with each other, in some of which a gift of the money, and in others a gift of the mortgage, is asserted, and in some of them an agreement is declared to the effect that the principal was never to be paid, but the interest, or so much as the mortgagee needed was to be paid.

The acquisition of contract rights, or property rights, by this sort of testimony, has been so frequently and so emphatically condemned by this court that it is not necessary to cite the authorities. A brief examination of the testimony given by the accountant and her witnesses in support of her claim will demonstrate its utter insufficiency to establish anything like a legitimate title to the mortgage in question.

The accountant was herself cross-examined as a witness and gave this version of her claim: "I borrowed fifteen hundred dollars from my sister which she gave me as a present and for which I gave her a mortgage." How the sister loaned her fifteen hundred dollars, and took a mortgage for it, and at the same time gave it to her as a present, cannot possibly be understood. She said further, "I gave that mortgage to my sister in 1883. My sister would not have taken the mortgage if she thought she would die before me. She made the mortgage if I should die before her." It is only necessary to say to this that "her sister" did not make the mortgage, and there is nothing in the mortgage about the accountant dying before her. Again, "I have not paid that mortgage, as she gave it to me as a present." Here she asserts a gift of the mortgage instead of the money, but both assertions were equally untrue, because there never was any gift of the mortgage; her sister retained it always to the time of her death. Again, "I paid a little interest on it. My sister said to me I should give her a little interest if I could, and if you cannot, it is all right, and the last three or four years I gave her groceries

and some money, and she said when she came to town she would give me a receipt for it, which she did not do. I got one receipt for three hundred and sixty dollars, which is marked Exhibit No. 1. She owed me for groceries. She put everything in her book and kept the account herself. I gave her groceries and money after the date of this receipt and of which I have kept no account. When we had this settlement in 1890, it did not take us long to come to a settlement. She wrote everything on a paper and gave me the receipt. And I have paid money since that time. . . . I gave her groceries for the interest, and she said to me, ' When you need the money I will give you the money.' . . . I gave her one hundred dollars to one hundred and twenty dollars in groceries. I only got the one receipt which comes down to June, 1890. I gave her groceries and money since that time, but I don't know how much." The utter worthlessness of her claim to be the owner of the fifteen hundred dollars of money, or of the mortgage, as a gift, is demonstrated by her own testimony. Of course if she was the owner of the money she could not be paying interest on it, because she did not owe any interest; and if she was the owner of the mortgage she could not be constantly acceding to an adverse claim of its ownership by her sister. The woman was evidently endeavoring to account in some way for the impossible fact of her having given a mortgage to secure the payment of money which she did not owe because it was her own, and of her constantly, during a number of years, paying interest on a mortgage which belonged to herself.· Of course she did not succeed.

The accountant's son was also examined, but his testimony was no better than his mother's. He said, " I was present when the mortgage of Magdalena Armbruster to the decedent for fifteen hundred dollars was written out, and was there with mother and Rosina Schiehl when it was signed. Rosina Schiehl gave my mother the money a few days before this mortgage was made as a present to build this house. . . . She told my mother she never wanted the money. . . . She made the mortgage in case my mother should die, and in case she would ever get in need us children could help her along · by paying the interest. The understanding was the fifteen hundred dollars was never to be paid. Just part of the interest if she needed it

during her natural life, and if my mother should die before, us children should pay the interest." As a matter of course if the fifteen hundred dollars was given "as a present to build this house" the accountant never owed any of it to her sister. Nevertheless she gave a mortgage for it and paid interest on it, and if her sister wanted interest the "children" were to pay it if their mother died before her sister. If their mother or her children were to pay interest on it, the money was not *given* to their mother, and if a mortgage was to be given to the accountant's sister to secure the payment of the money, by creating a lien on the mortgagor's real estate, it is idle and frivolous to talk either of the money or the mortgage being a gift to the mortgagor. The rest of the testimony in support of the accountant's claim consists of vague, loose, conflicting and contradictory declarations made to strangers, and it is the same stale, old, flimsy chatter that we so often have before us, and so often repudiate and condemn in all this class of cases. For instance, Mrs. Bruter was called by the accountant, and she testified as follows: " Mrs. Schiehl told me she had gotten a mortgage of Mrs. Armbruster, and when she would die she would give it to her for a present; if she would die before her sister, she would give it to her for a present." This is a new version of the story. According to this testimony, Mrs. Schiehl, being the owner of the mortgage, said to this witness that she would give it to her sister for a present if she would die before her sister. This was a declaration that she intended at some time in the future to give the mortgage to her sister. Of course, as will hereafter be shown, such a purpose to make a gift is absolutely nugatory unless it is followed before death by an actual gift with delivery of possession, but at the present we only wish to show the utter inconsistency and contradictory character of the testimony upon which the accountant's claim is attempted to be supported. This testimony proceeds upon the fundamental idea that the mortgage belonged, not to the accountant, but to her sister, the decedent, and that it was to be given in the future, and hence could not have been already given in the past. If this testimony is to be believed, the decedent had never given the money to the accountant, and had never parted with her title to the mortgage.

Mrs. Ammerdick, a daughter of the accountant, testified,

" Mrs. Schiehl told me she never wanted the $1,500, that after her death it was mother's as a present, and if she wanted a little interest she would get it, and if she hadn't it she was satisfied with it. . . . She said mother was to have the mortgage." Here also was a declaration of a purpose to make a future gift to take effect after her death.

Mrs. Clinsing, another daughter of accountant, testified for her as follows: " Mrs. Schiehl said she gave $1,500 to mother as a present and never wanted it back; she said, 'Isabella, I gave your mother $1,500 for a present, you will get some of that, and I never want it back.' She was positive she did not want it back, as she had given it to mother as a present." She repeats the same story in her cross-examination two or three times. According to this testimony the money was given as a present and therefore belonged to the accountant from the very beginning. Mrs. Dank, another witness for the accountant, testified, " I often heard her (Mrs. Schiehl) say that this $1,500 belonged to her sister, and had given it to her as a present, and that she could give her the interest on it." She repeats the same statement several times. One more witness, Catharine Keller, speaking of a conversation she had with Mrs. Schiehl, was asked, " Q. What did she say about the $1,500? A. She said the mortgage was hers, and if she could not pay any interest it was all right. Q. By her she means Magdalena Armbruster? A. Yes, sir, I mean her." According to this testimony it was the mortgage and not the money that had been given to the accountant.

The foregoing is the substance of all the testimony given by the accountant. A mere perusal of it shows that it will not bear the least investigation. There is no certainty arising from it as to what the accountant's claim really is, because her contentions are entirely conflicting and contradictory. Her claim that the $1,500 of money was given to her as a present is an absolutely unfounded claim which can not possibly be sustained in any aspect of the testimony. We know absolutely, and from her own testimony, that it was not given to her. She says herself, " I borrowed $1,500 from my sister . . . . for which I gave a mortgage." But the fact that she gave a mortgage for the money is an incontestable and undisputed fact, and hence she could not have been the owner of the money by gift or by

any other title.   Moreover she constantly paid interest on the money for years, and never ceased to be a borrower of the money as long as her sister lived.   The transaction was a loan of money beyond all possible question, for which a mortgage was given in the ordinary form under seal, conditioned for the payment of principal and interest.   This mortgage was delivered to the decedent, and held in her exclusive possession until her death.

If it be contended that the mortgage was given upon a condition that the principal was never to be paid, and only such interest as the obligee needed, the manifest reply is that there is no such explicit testimony in the case, and if there were, it is merely verbal testimony to contradict, alter, change and nullify a solemn, sealed and delivered obligation, in no part of which do any such terms or conditions appear.   Moreover there is not a scrap of testimony anywhere in the case, that any such conditions were agreed upon and omitted to be inserted in the instrument by any mistake, fraud or imposition on the part of any one, or that such a thing was ever asked, or consented to by anybody.   There is not a single element appearing in the testimony which would be necessary, indispensable, to bring the case within the line of decisions under which written instruments may be changed by parol.   This branch of the case may be dismissed without further comment.

The only remaining contention, that the mortgage was given to the accountant, is in a still worse condition, if that were possible, than either of the others, because it is both physically and legally untrue.   The mortgage was never given to the accountant, but remained in the decedent's possession until her death, and was found among her papers after her death.   This is distinctly proved by the testimony of Peter Schiehl, by the accountant, and by her daughter, Mrs. Ammerdick, both of whom hunted for it and could not find it the evening before Mrs. Schiehl's death.

On the legal aspect of this subject the authorities are most clear and explicit.   In the case In re Campbell's Est., 7 Pa. 100, the accountant was the administrator and favorite nephew of the intestate, and was indebted to his uncle upon several promissory notes which his uncle held against him.   It was distinctly proved before the auditors that the intestate made a

distribution of his securities in his lifetime among various relations, and had assignments of them duly prepared and executed. When this was being done the intestate was asked by his wife what he would do with the accountant's notes, and he replied by directing her to either burn them or give them to him. She delivered them to accountant after her husband's death. Nevertheless this court held he was liable for them and surcharged him with them. GIBSON, C. J., delivering the opinion said, " The notes in question could have been discharged only by a sealed release or a parol gift of them; the disposition insisted on by the accountant was neither. A gift is a contract executed, and as the act of execution is delivery of possession, it is of the essence of the title. It is the consummation of the contract which, without it, would be no more than a mere contract to give, and without efficacy for the want of a consideration. . . . The gift of a bond, note or any other chattel, cannot be made by words in futuro, or by words in præsenti, unaccompanied by such delivery of the possession as makes the disposal of the thing irrevocable. . . . Nothing discharges it while it remains in the creditor's possession and power. The cases all agree not excepting even Wentz v. DeHaven, 1 S. & R. 317, that the parol discharge of a debt, without consideration, or delivery up of the security is inoperative." After stating the facts of the case including the direction to his wife to destroy or deliver them, the Chief Justice says, " But all agree that the possession was not parted with; and it cannot be disputed that his intention to have them destroyed or delivered up might have been abandoned, and his directions countermanded. They were his property while he lived; and as the direction was not a testamentary one, it became inoperative at his death. It was a mere authority which expired with him."

How infinitely stronger is this cited case than the case at bar. There, there was no question about the intent of the owner and his positive direction to his wife to destroy or deliver the notes. And yet because this was not actually done in the owner's lifetime it was nugatory. Here everything is in dispute. There was no direction to destroy or deliver the mortgage, there was no pretense of an assignment of it, and it remained in the owner's possession and control until her death. The only testimony as to an intent to give, is the flimsiest and loosest kind

of declarations, which are abundantly contradicted by more testimony of declarations that she had never had such an intent. Still worse the accountant and her witnesses give conflicting and contradictory testimony as to what the declarations really were. But if there were no questions of this kind in the case, and if an intent to give, and a direction to deliver, had been fully proved by undisputed testimony, it would have amounted to nothing under the authority of the case last cited.

In Kidder v. Kidder, 33 Pa. 268, the decision in Campbell's Est. was approved and followed. There also the facts were vastly stronger than in this case. The plaintiff in an action of assumpsit held a promissory note for $454 against two persons. He executed a release in writing, but not under seal, of one of the defendants from all liability on the note. The court below held this to be a good release of the cause of action, but this court reversed the judgment, holding that the release not being under seal was without consideration, and that as a gift it could not be sustained because the note was not delivered to the debtor. THOMPSON, J., delivering the opinion said, "The release in question, in this case, is without a seal and without any consideration expressed. As a release it was void. It was nudum pactum, and should have been so held by the court. The defendant in error feeling the force of the want of consideration, as a dernier resort, has endeavored to give effect to the release, as a gift to the releasee of one half of the demand. But this is, if possible, a more hopeless undertaking than that of supporting the release without a consideration. It was not an executed gift even if the instrument would bear the interpretation that a gift was intended, because the instrument to be given was not delivered. If then, it was but an agreement to give, it could not be enforced without a consideration, any more than could a release. On this point the case In re Campbell's Est., 7 Barr, 100, need only be cited." Then follows the citation already quoted. In this case also there was not the least question as to the intent of the plaintiff to release the cause of action. It was expressed in writing, and signed by the plaintiff, but because it was not under seal, and no actual consideration was proved, it could have no effect as a release, and could have none as a gift because the note was not delivered. In the present case there never was any such thing as a

release of the mortgage, and of course there never was any consideration for either a gift, or a promise to give. The accountant had borrowed and received the whole $1,500 from the testatrix, had given a mortgage for its payment, had never obtained any kind of assignment or release, and had never received the mortgage from the owner. Of course she had no kind of title to it. In the case of Zimmerman v. Streeper et al., 75 Pa. 147, the facts were, that Streeper held a bond against Zimmerman; he indorsed on it, "I request my executors to give this bond to Anna for her great kindness she has shown to me and her grandmother." This was signed and sealed; after it, was written, "this is not to interfere with what I will to her, this she is to have beside that." Anna was a granddaughter of the obligee and the wife of the obligor. The bond was not delivered to Anna, but remained in the obligee's possession with his securities until his death. Held that the bond did not pass to Anna. The indorsement indicated a prospective gift; there being no delivery, it was without operation. The court of common pleas delivered a very elaborate and exhaustive opinion, in which numerous authorities were considered, and concluded as follows : "It is clear from these authorities that unless there be a delivery of the chose in action, or an assignment of it to the donee, the gift is not executed, and the donee acquires no right under it." This court affirmed the judgment in a short per curiam opinion, approving the opinion of the lower court.

It is not necessary to extend the citations. They are not controverted, and are the undoubted law of the commonwealth. The appellee cites Livingood's Appeal, 167 Pa. 191, to sustain the contention that the title to the mortgage passed to the accountant. An examination of that case, however, shows that the facts were entirely different. There the decedent in his lifetime directed his wife to deliver to his brother a bond and mortgage which he held against him. The wife actually did deliver the securities to the brother, who took them into his possession, and subsequently returned them to the wife of the obligee with a request that she would keep them for him until he called for them, which she agreed to do, and continued to hold them for the obligor as his bailee or agent until after the death of the obligee. She placed them, after his death, in a box in which the obligee had kept other securities, and they

remained there until the time of the appraisement. In addition to this, the auditing judge found as a fact that the obligee had forgiven the debts evidenced by the securities in question by repeated declarations to that effect, and had also requested the obligor, who was his brother, and attorney at law, to make oath to a statement as required by act of assemby relating to taxes of mortgages and money owing by various persons to the obligee, from which the bond and mortgage owing by the brother were omitted, and at the bottom of which was the following: " The judgment of seven hundred and mortgage of five thousand dollars against William H. Livingood is satisfied. Witness my hand this eleventh day of April A. D. 1891. James C. Livingood. Witness present, Catharine A. Livingood."

The auditing judge further found " that the decedent intended to forgive, and actually did forgive, the· debts of said William H. Livingood," mentioning them, and " that from February 19, 1890, or very soon thereafter, until after the death of the decedent, the securities for the said debt were in the possession of the said William H. Livingood, by directions of the decedent." He further found as follows: " I have found as facts, the intention of this testator to forgive these debts, and his actual delivery to the accountant of the securities for them, and that the securities were in the possession of the accountant at the decease of the testator." Upon these facts it was ruled by the orphans' court and affirmed by this court, that there had been an actual delivery of the securities to the debtor, who thereafter held them in his possession until the death of the obligee. It is only necessary to say that there are not only no such facts in the present case, but that the actual facts are diametrically opposite to these.

The case of Davidson v. Young, 167 Pa. 265, is also cited for the appellee, but is no more applicable to · this case than the last one cited. It was an issue of fact to determine the validity of a judgment given by a son to his father, where it was alleged and proved that at the time the judgment was given it was verbally agreed between the parties that the judgment was given merely to secure the father's support in case he met with reverses, and that no portion of it was ever to be collected unless ·he needed it for that purpose. The question

was whether the bond was given in pursuance of a contemporaneous parol agreement that it was only to be used if needed for the father's support. The evidence was overwhelmingly to that effect, and the jury so found. It was not a bond given for the loan of money, but for the special purpose named. Of course there are no such facts in this case, and the authority cited has no application. In the view that we take of this case the matters discussed in the paper-books have but little relevancy, and are not essential to its determination. There never was any title in the accountant to this mortgage, and she must therefore account for it. Inasmuch as the accountant is the sole residuary legatee of the exceptant's wife, who has excluded him in his old age from any share of her estate, it is not a matter of surprise that he should claim what the law gives him, against the will; and it should be the duty of the courts to see that he is not to be " conversationed," out of his plain statutory right, by the uncertain, conflicting, contradictory, vacillating utterances of his wife. The assignments of error are sustained.

The decree of the court below is reversed at the cost of the appellee, and the record is remitted with instructions to surcharge the accountant with the mortgage in question and interest thereon, and to restate the account and make distribution in accordance with this opinion.