DAVID D. AUGSBURY, as Administrator with the Will Annexed of SARAH ANN ROOF, Deceased, Appellant, *v.* LOREN F. SHURTLIFF, Respondent.

1. SAVINGS BANK DEPOSIT— ORDER EXECUTED BY HUSBAND AND WIFE DIRECTING INDIVIDUAL DEPOSITS TO BE PAID TO THE SURVIVOR — WHEN ORDER IS EXECUTORY. · An instrument executed by a husband and wife, addressed to a savings bank in which each had a separate account, requesting that their accounts be merged so as to run to either or to the survivor of them, constitutes an order that their accounts be changed so as to make each the joint owner of the entirety so that upon the death of one the survivor would become the owner of the whole; it is executory, however, until presented to the bank and the changes are made, and, consequently, may be revoked by either party at any time before the order has been complied with.

2. SAME — WHEN HOLDER OF PAPER AN AGENT FOR ITS DELIVERY AT BANK — REVOCATION OF AGENCY BY DEATH OF PRINCIPAL — QUESTION OF FACT. Where, therefore, such an instrument, after execution, is left in the possession of the husband, he is deemed to be the agent of his wife for the purpose of delivering the paper at the bank, and if he fails to do this within her lifetime, his agency, by the happening of her death, is deemed to have been revoked, and in an action brought after the death of

the wife, by her administrator, to recover possession of her bank book, the question as to whether the order was delivered during her lifetime is material, and it is reversible error to nonsuit the plaintiff and refuse to submit it to the jury.

Augsbury v. Shurtliff, 90 App. Div. 613, reversed.

(Argued November 23, 1904; decided December 30, 1904.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered February 15, 1904, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*E. C. Emerson* for appellant. The question whether there was any intention on the part of Sarah Ann Roof to transfer title to the fund in the bank was one of fact, and should have been submitted to the jury. (*Farleigh* v. *Cadman*, 159 N. Y. 169; *Matter of Bolin*, 136 N. Y. 177; *Mabie* v. *Bailey*, 95 N. Y. 210; *Shuttleworth* v. *Winter*, 55 N. Y. 624; *Matter of Bronson*, 67 Hun, 240; *Hamlin* v. *Stevens*, 177 N. Y. 39; *Trustees New Hampton* v. *Vail*, 151 N. Y. 463; *Clark* v. *Wise*, 46 N. Y. 612; *Patten* v. *Pancoast*, 109 N. Y. 625; *Van Schaick* v. *T. A. R. R. Co.*, 38 N. Y. 353; *Vance* v. *Phillips*, 6 Hill, 433; *Pitney* v. *G. F. Ins. Co.*, 65 N. Y. 6; *Decker* v. *D. S. Inst.*, 15 App. Div. 553; *Gansberg* v. *Sagemohl*, 67 App. Div. 554.) The question as to whether the paper and pass book were delivered to the bank and the entries made before or after the death of Sarah Ann Roof was, as we have seen, one of fact, and should have been submitted to the jury. (*O'Gara* v. *Eisenlohr*, 38 N. Y. 296.)

*John N. Carlisle* for respondent. There were no questions of fact to be submitted to the jury. (*Farrelly* v. *E. I. Sav. Bank*, 92 App. Div. 529; *Mabie* v. *Bailey*, 95 N. Y. 211.)

HAIGHT, J. This action was brought to recover a savings bank pass book issued to Sarah Ann Roof in her lifetime by

the Jefferson County Savings Bank. The defendant was the administrator with the will annexed of John C. Roof, and claims the right to hold the pass book as the property of his testator.

John C. Roof and Sarah Ann Roof were husband and wife. They had both been married before, but neither had any children. They both had made deposits in the Jefferson County Savings Bank and a pass book had been issued to each of them. Sarah Ann Roof had a balance upon her book of $911.26, and John C. Roof had a balance upon his book of $900.88. They were about eighty years of age and had each made and executed a will, in which each gave the use of his or her property to the other during life, and upon the death of the survivor each had bequeathed his or her property to collateral relatives. After the execution of these wills, and on the 8th day of January, 1896, they signed a paper, of which the following is a copy :

"THERESA, N. Y., *Jan.* 8, 1896.
" *To Jefferson County Savings Bank :*

" GENTLEMEN.— We, the undersigned, owners of bank books No. 23,661 and No. 25,472 issued by your bank, desire to have the accounts therein merged into an account running to John C. Roof or Sarah Ann Roof or the survivor of them. Our object being that, in case of the death of either, the other may draw the whole amount.

" Witnesses,                JOHN C. ROOF.
    " MARY E. COUNTRYMAN.        SARAH ANN ROOF.
    " LIZZIE COUNTRYMAN."

Two days after the making of the foregoing instrument Sarah Ann Roof had a stroke of paralysis and was confined to her bed until her death, which occurred ten days later. Some days after the making of the paper John C. Roof took the paper to the savings bank together with the bank book of his wife, and the teller pasted the paper in the bank book containing signatures and wrote upon the pass book after the name of Sarah Ann Roof the words "and John C. Roof" so

that the account read " Jefferson County Savings Bank in account with Sarah Ann Roof and John C. Roof." He also made the same change upon the ledger account. It is claimed on behalf of the plaintiff that the paper was taken to the bank and the changes made in the books after the death of Mrs. Roof and that prior to her death and after her paralytic stroke she spoke to her husband in monosyllables at repeated intervals indicating that she wanted her own and that he replied to her that he knew what she wanted and that he would get the paper and destroy it, and that the conversation had reference to the above-described paper.

The first question which we deem it important to consider is the meaning and effect intended to be given by the parties to the paper. As we have seen it is addressed " to the Jefferson County Savings Bank." The respective owners of the bank books which were described in the paper expressed their desire to have their accounts merged so as to run to John C. Roof or Sarah Ann Roof or the survivor of them. They then conclude by stating their object to be " that in the case of the death of either the other may draw the whole amount." There are no words here indicating any present gift from one to the other of any portion of the funds on deposit in the bank. On the contrary, it is apparent that each in his or her lifetime intended to retain the fund so that either could draw upon their deposits as their necessities might require ; but it is apparent that they intended that upon the death of either the other should be permitted to draw the whole amount. The purpose for which the survivor might draw the whole amount is not specified. In the absence of evidence upon the subject the inference might be permissible that it was their intention to give the survivor the right to draw the whole amount so as to make it his or her own property. Assuming this to be so, the effect of the paper was, therefore, a written order addressed to the bank requesting it to change their respective deposits so as to make each the joint owner of the entirety, analogous to a joint tenancy or tenant by the entirety in real estate, so that upon the death of

one the survivor became the owner of the whole. (*Bertles v. Nunan*, 92 N. Y. 152.)

As we have seen, the paper was an order merely and was executory until it was presented to the bank and the deposits were changed in accordance therewith. . It is conceded that it was subsequently taken to the bank by John C. Roof and the changes made so far as the deposit of Mrs. Roof was concerned, but was this change made during her lifetime? Upon this subject considerable evidence was taken and if the fact is material it, doubtless, became a question for the jury to determine. This brings us to a consideration of the question as to whether the order is deemed to be revoked by the death of Mrs. Roof before it was delivered to the bank and the change in the deposits made. The order was executory until its delivery to the bank and the changes in the deposits were made. It, consequently, could be revoked by either party at any time before the order had been complied with. It is contended that Mrs. Roof did revoke by her statements in monosyllables, but these declarations were too vague and uncertain to warrant a finding of fact to that effect. If it was revoked it was by reason of her death before it was delivered to the bank. The paper, as we have seen, was a mere executory order, which did not constitute an executed gift or make either of the parties thereto a creditor of the other. Mrs. Roof only intended to give to her husband the same right to draw upon their joint account that she had until her death and then if he survived her the right to draw the whole, but before her order had been executed she died and her estate at once became vested in her heirs at law or upon proof of her will in her collateral relatives specified, subject to the life use of her husband. If her husband had become her creditor he could prove his claim as against her estate, but he was not a creditor. If the execution of the paper was a gift *in presenti*, then, of course, the money on deposit became his, but it was not such a gift nor so intended, for she retained the right to draw every dollar of the fund and use it for her own purposes. It was not a gift *inter vivos*, for the reason that, as we have shown,

the order was executory and not executed. It was not a gift *causa mortis*, for the reason that the parties at the time of executing the paper were not suffering from any disease or apprehensive of death from any impending perils. The paper, as we have seen, was left in the possession of John C. Roof. He is deemed, therefore, to have become the agent of his wife to take the paper to the bank, but if he failed to do this within her lifetime his agency, by the happening of that event, is deemed to have been revoked.

Schouler on Personal Property (Vol. 2, § 86) correctly states the rule as we understand it : " An agency is revoked by the principal's death ; therefore, the agent of one who intends a gift *inter vivos* must have performed what was incumbent upon him to make the transfer complete during the donor's lifetime, otherwise the gift fails as though the donor himself had failed to make a seasonable delivery. Nor can a gift *inter vivos* be sustained which contemplates a post-ponement of delivery by the agent or trustee until the donor's decease, for a gift of personalty made after this fashion must stand, if at all, as a gift *causa mortis*, or else on the footing of a testamentary disposition, with all the formalities of a will. Delivery, then, in all cases of ordinary gift must have been made during the donor's lifetime. But if the gift has been once completed, so as to fully transfer the beneficial interest from donor to donee, in accordance with their mutual intent, and so as to make any third party holding the custody, the trustee for carrying out the original purposes of the donation, or the donee's agent, the subsequent death of the donor, sooner or later, will leave the gift unimpaired." (Story on Agency, § 488; *Farmers' L. & T. Co.* v. *Wilson*, 139 N. Y. 284, 289.)

We conclude that the question as to whether the order was delivered to the savings bank during the lifetime of Mrs. Roof is material, and under the evidence the question as to whether it was so delivered was for the jury and that the exception taken by the appellant to the nonsuit raises an error of law which requires a reversal of the judgment.

The judgment should be reversed and a new trial granted, with costs to abide the event.

VANN, J. (concurring). This action was brought by the personal representative of Sarah Ann Roof against the personal representative of John C. Roof, her husband, to recover possession of a savings bank pass book as evidence and a muniment of title to the deposit represented thereby, which, according to the rules of the bank, could be drawn only upon the production thereof. The defendant by his answer claimed that, as such personal representative, he was entitled to possession of the pass book and to the amount of the deposit. Upon the trial before a jury a nonsuit was granted, and the judgment entered thereon having been affirmed by the Appellate Division, the plaintiff came here.

John C. Roof and Sarah Ann Roof, his wife, were aged people, without children, and each had a small amount of property. On the second of September, 1890, when she was seventy-five years of age, Mrs. Roof made her will, whereby she gave to her husband the use of all her property during his life. On the 18th of July, 1895, when he was seventy-seven years old, Mr. Roof made his will whereby he gave to his wife the use of all his property during her life. On the eighth of January, 1896, each had a pass book from the Jefferson County Savings Bank, representing deposits made by them respectively at various times. The balance on that day due her, according to her pass book, was the sum of $911.26, and the balance due him, according to his pass book, was the sum of $900.88. On the day last named Mr. and Mrs. Roof executed an instrument, of which the following is a copy:

"THERESA, N. Y., Jan'y 8, 1896.
" *To Jefferson Co. Savings Bank :*

" GENTLEMEN.—We, the undersigned, owners of bank books No. 23,661 and No. 25,472, issued by your bank, desire to have the accounts therein merged into an account running to John C. Roof or Sarah Ann Roof, or to the survivor of them,

our object being that in case of the death of either the other may draw the whole amount.

" Witnesses :                    JOHN C. ROOF.
  " Mary E. Countryman.          SARAH ANN ROOF.
  " Lizzie Countryman."

Mrs. Roof had a stroke of paralysis on the tenth of January, 1896, and died ten days later, while Mr. Roof survived until the eighth of August, 1899. At some time he took her pass book and said paper to the bank when the entry was changed by the paying teller, who added the name of John C. Roof as one of the depositors, so that it read : "Jefferson County Savings Bank, in account with Sarah Ann Roof and John C. Roof." Both accounts were changed on the ledger of the bank so as to read in the same way, but no change was made in the pass book of Mr. Roof, which was not produced for the purpose. Whether said changes were made before or after the death of Mrs. Roof was a question upon which there was a conflict in the evidence.

When the plaintiff rested the defendant moved for a nonsuit, which was granted, although counsel asked to go to the jury " on the question as to whether there was an intent upon the part of Sarah Ann Roof to transfer her interest in this fund to her husband ; " and also " upon all the questions of fact in the case." Each request was denied separately and a separate exception was taken to each ruling.

The instrument of January 8, 1896, was a letter of instructions to the bank, directing that the two accounts should be merged into one, running to the two depositors severally, or to the survivor. The object of the merger, as expressly stated in the paper, was to enable the survivor to draw the whole amount upon the death of the other. The question at once arises, why did these two old people desire to confer authority upon the longest liver of them to draw the entire sum on deposit to the credit of each separately ? · They were husband and wife, so that the object may have been a gift. They had made mutual wills, so that the object may

10

have been convenience both of administration and enjoyment under the wills, which gave a life use.

The letter of instructions was not literally complied with by the bank, which changed the account in question so as to make it joint in form, whereas the direction was to make it several. The two names should have been separated by the word " or," but instead, they were united by the word " and." What the bank did, however, is not very important, but what Mr. and Mrs. Roof wrote is of the highest importance. As the account was to be several in form, either could draw during the lifetime of both, which would tend to show that a gift *inter vivos* was not intended. (*Gannon* v. *McGuire*, 160 N. Y. 476, 481; *Beaver* v. *Beaver*, 117 N. Y. 421, 428.) The fact that neither of the parties was at the time laboring under the apprehension of death from some disease then existing would tend to show that a gift *causa mortis* was not intended. (*Ridden* v. *Thrall*, 125 N. Y. 572, 579; *Williams* v. *Guile*, 117 N. Y. 343, 349.)

When a donor receives as much as he gives, a consideration is suggested, and a consideration suggests a contract. Each of these parties had the same chance of benefit as the other, and the question is presented whether there was an agreement underlying the letter of instructions of which the latter, as the means of carrying it into effect, was some evidence.

Considering that the relation of husband and wife existed between these persons; that they had no near relatives; that they had made mutual wills; that they had both reached extreme old age; and that their bank accounts were substantially equal in amount; and reading the letter of instructions in the light of these facts, I think that the question of fact arose whether each had transferred to the survivor his or her bank account, or what should be left of it upon the death of the shortest liver. While the letter of instructions was not a transfer, it was evidence from which, in connection with the other facts, a jury might infer, not necessarily but in the exercise of their sound judgment, that such a transfer as would fit the letter had been made. Since the letter is

adapted to carrying a particular form of transfer into effect, it is some evidence that a transfer of that kind had been made. It may have been drawn for some other purpose, such as mere convenience, but it was for the jury to say, under all the circumstances. While Mr. Roof was named as the executor of his wife's will, she was not named as the executrix of his will, so that convenience of administration would not, necessarily, have been promoted by the letter.

A contract by which each of two owners of a fund, as tenants in common, transfers his interest therein to the other if he survives him, is supported by a good consideration, and I see no reason why the intention of the parties should not be enforced by the courts. While such an agreement cannot be performed until after the death of one of the parties, it is complete and irrevocable, for neither can withdraw therefrom without the consent of the other. It is not testamentary in character, because it is founded on a valuable consideration and is not subject to revocation. It is as absolute as a deed, " which is to take effect so as to pass the title at " the death of the grantor. ( *Worth* v. *Case*, 42 N. Y. 362, 366 ; *Carnwright* v. *Gray*, 127 N. Y. 92.) When a husband takes securities payable to himself or his wife, they become hers if she survives him, and the delivery thereof to her by him is not necessary to perfect the gift. (*Sanford* v. *Sanford*, 45 N. Y. 723 ; *Fowler* v. *Butterly*, 78 N. Y. 68, 72.) This is upon the theory of a gift where there is no consideration, but where there is a contract between husband and wife, resting upon a mutual and equal consideration, providing that the security created by both and standing in their names severally shall belong to the survivor, effect must be given to it or the law of contracts is violated.

Without prolonging the discussion I am of the opinion that there was a question of fact other than that discussed in the prevailing opinion which should have been sent to the jury, and I, therefore, concur in the result.

Cullen, Ch. J., Gray and O'Brien, JJ., agree with Haight, J.; Bartlett, J., agrees with Vann, J.; Werner, J., absent.

Judgment reversed, etc.