(103 App. Div. 107.)

### HALLENBECK v. HALLENBECK et al.

(Supreme Court, Appellate Division, Third Department.   March 8, 1905.)

SAVINGS BANKS—INDIVIDUAL DEPOSIT—MERGER—ORDER FOR PAYMENT TO
EITHER OF TWO OR THE SURVIVOR—PRIMA FACIE TITLE OF SURVIVING DE-
POSITOR.

> A depositor executed an instrument directing the bank's treasurer to
> add the name of the depositor's niece as owner and creditor with the
> depositor of all moneys deposited in the bank under its contract of a
> specified number, together with interest thereon, "with full authority
> for each or either of us, or the survivor of us, to draw out from said bank
> the whole or any part of such moneys or interest." A new passbook
> was issued, bearing the number specified in the writing, payable as di-
> rected in the contract. No new deposits were made to the account before
> the death of the original depositor, but the niece on two occasions had
> drawn money from the deposit. Held, that the form of the account gave
> the niece a prima facie title, which could not be destroyed in the absence
> of a finding that the change was made for some other purpose than to
> pass title, or for the convenience of the original depositor in drawing.
>     Parker, P. J., and Smith, J., dissenting.

Appeal from Special Term, Albany County.

Action by Huldah B. Hallenbeck against Albert C. Hallenbeck in-
dividually and as executor of the will of Huldah Van Aernam, de-
ceased, and another, to determine the title to a savings bank deposit.
From a judgment for defendants (89 N. Y. Supp. 780), plaintiff ap-
peals. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER,
and HOUGHTON, JJ.

Patrick C. Dugan, for appellant.
John D. White (Peter A. Delaney, of counsel), for respondents.

HOUGHTON, J.   For several years Huldah Van Aernam had had
an account in the Albany County Savings Bank, and on the 7th of
October, 1897, she told the teller of the bank that she wanted the
name of the plaintiff, her niece, added to her passbook so that either
of them, or the survivor, could draw the money then on deposit by
her. The teller produced a printed form used by the bank in such
cases, filled it out, and Huldah Van Aernam signed it and delivered
it to the teller, together with her old passbook. The written direc-
tions for change of account was as follows:

"October 7th, 1897.

"The Treasurer of the Albany County Savings Bank will please add the
name of my niece, Huldah B. Hallenbeck, as owner and creditor with me of
all moneys heretofore or which may hereafter be deposited in said bank un-
der its account No. 12413, together with the interest which has been or may
hereafter be credited to said account, with full authority for each or either
of us, or the survivor of us, to draw out from said bank the whole or any
part of such monies or such interest.

"[Signed]                                    Huldah Van Aernam."

The new passbook issued in place of the old one was No. 12,413,
and read:

"Huldah Van Aernam or Huldah B. Hallenbeck.  Pay to either or the sur-
vivor of either.  In account with Albany County Savings Bank, Albany, N. Y."

The balance taken from the old account on October 7th was $1,675. No new deposits were made to this account from the time it was opened up to the death of Huldah Van Aernam, in 1902; the interest alone being credited semiannually. Two withdrawals were made by the plaintiff, who, according to the rules of the bank, must have produced the bankbook, one in 1899, and one in 1900.

At the time of the change in the deposit, Huldah Van Aernam was 88 years of age, and lived in the country, several miles distant from the savings bank. She had been possessed of a considerable amount of money, and had no descendants, and from time to time had conveyed property and given various sums of money to various collateral relatives. Subsequent to the change of the account she declared to a friend on several occasions that the plaintiff had been very kind and considerate of her, and that she was going to do well by her, as she had or intended to do by others, and that she had a bankbook for her (plaintiff), and that the "bankbook was hers" (plaintiff's). On the death of Huldah Van Aernam the bankbook in question was found in a private box of her own, in which she kept other papers belonging to her, the key to which had been in her possession or that of her custodian for more than a year prior to her death. The trial court found that Huldah Van Aernam intended to give the bankbook and the deposit represented by it to the plaintiff, but, as matter of law, failed so to do, and dismissed the complaint.

There was evidence given by the witness White of declarations of the plaintiff to him, from which, standing alone, it might be inferred that it was the intention of Huldah Van Aernam, understood by the plaintiff, that the change in the account was made for the convenience of Huldah in the withdrawal of the money; but the trial court made no finding of fact relating thereto. The case of Augsbury v. Shurtliff, 180 N. Y. 138, 72 N. E. 927, contains the latest expression of the Court of Appeals upon this troublesome class of cases. In that case a husband and wife each had accounts in a savings bank, and both signed a written direction to the bank to merge their accounts into an account running to the one or the other, or the survivor; adding that the object was to so change the accounts that in case of the death of either the other might draw the whole amount. The wife died, and the question arose whether this direction to the bank was delivered by the husband to it, and the account changed, before or after the wife's death. The trial court had dismissed the husband's complaint, but the Court of Appeals held that this was a material question, which should have been submitted to the jury, and reversed the judgment. In the course of the opinion, Haight, J., says:

"There are no words here indicating any present gift from one to the other of any portion of the funds on deposit in the bank. On the contrary, it is apparent that each in his or her lifetime intended to retain the fund so that either could draw upon their deposits as their necessities might require, but it is apparent that they intended upon the death of either the other should be permitted to draw the whole amount. The purpose for which the survivor might draw the whole amount is not specified. In the absence of evidence upon the subject, the inference might be permissible that it was their intention to give the survivor the right to draw the whole amount, so as to make it his or her own property. Assuming this to be so, the effect of the paper

was therefore a written order, addressed to the bank, requesting it to change their respective deposits so as to make each the joint owner of the entirety, analogous to a joint tenancy or tenant by the entirety in real estate, so that, upon the death of one, the survivor became the owner of the whole. * * * This brings us to a consideration of the question as to whether the order is deemed to be revoked by the death of Mrs. Roof before it was delivered to the bank, and the changes in the deposits were made. The order was executory until its delivery to the bank, and the changes in the deposits were made. It consequently could be revoked by either party at any time before the order had been complied with."

The opinion continues with a discussion of the lack of the essential features of a gift inter vivos or one causa mortis, and concludes that whether or not the order was delivered to the bank during the lifetime of the wife was a material question of fact, which should have been determined by the trial court. A portion of the court, while concurring, concluded that there was a still further question—as to whether or not each had actually transferred to the survivor what should be left of the bank account upon the death of the one first dying. In the course of such concurring opinion, Vann, J., says:

"Considering that the relation of husband and wife existed between these persons, that they had no near relatives, that they had made mutual wills, that they had both reached extreme old age, and that their bank accounts were substantially equal in amount, and reading the letter of instructions in the light of these facts, I think that the question of fact arose whether each had transferred to the survivor his or her bank account, or what should be left of it upon the death of the shortest liver. * * * It [the letter of instructions] may have been drawn for some other purpose, such as mere convenience, but that was for the jury to say, under all the circumstances."

We can see no practical difference in the effect of the instructions for change of account in the above case from those in the case at bar. Both are plain directions to change the account and make it a joint and several one, with the right in the survivor to draw what may remain. The instructions were delivered, acted upon, and the new bankbook delivered, years before the death of the original depositor, and the plaintiff had drawn money from the deposit on two several occasions. Even if the new bankbook at all times was in the possession of Huldah Van Aernam, the withdrawals must have been with her assent, for none could be made without presentation of the book.

The trial court, in his opinion, says that he attaches no importance to the language of the paper signed by Huldah Van Aernam, authorizing and directing the change in the form of her account. There is no evidence that she did not perfectly understand the effect of the paper when she signed it and delivered it to the bank, and it, in fact, effected precisely what she announced she desired to have done. The language and effect of an instrument executed under such circumstances cannot be ignored. Huldah Van Aernam, before this change of the account, had declared that the plaintiff had done much for her, and that she intended to do well by her. Under such conditions, in view of the solemn execution of the paper, it might well be said that Huldah Van Aernam intended to, and did, transfer whatever should remain on deposit at her death absolutely to this plaintiff. If there was an understanding that such transfer and change of account were in payment of services, however slight the consideration may have been, it

was good as between the parties, and passed irrevocable title to the fund.

The plaintiff was entitled, in the absence of any evidence overthrowing or limiting it, to have considered in her favor the full language of the instructions for the change of the account. The form of the account gave her prima facie title. Before this could be destroyed there must have been a finding that a change in the account was made for some other purpose than to pass title, or for the convenience of the original depositor in drawing. These facts not having been found or passed upon by the trial court, a dismissal of the complaint was unwarranted, and the judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except PARKER, P. J., and SMITH, J., who dissent.