A. M. CRAIG, Public Administrator, Appellant, v. T. L. BRADLEY, Administrator, Appellant.

Kansas City Court of Appeals, January 30, 1911.

1. **ESTATES BY THE ENTIRETY: Personal Property: Married Woman's Statute.** Estates by the entirety exist in personal property in Missouri, unaffected by the statute giving the wife sole control and disposition of her property as though a *femme sole.* That statute did not interfere with or alter such estate.

2. ———: ———: **Note to Husband and Wife: Sale of Real Estate.** Where a husband and wife owned land by the entirety and sold it, taking a note for the purchase money, in the name of both, they have in it an estate by the entirety, and upon the death of the husband, she as survivor remained the owner of the whole note; and upon her death her administrator could recover it of his administrator.

3. ———: ———: **Bank Accounts.** Where two bank accounts, in different banks, opened by the husband and made up of deposits by him, were kept in the name of the husband and wife, the intention being that the survivor should have all, and he died; it was *held* that the accounts were estates by the entirety and upon the husband's death the wife remained the owner as survivor.

4. ———: ———: **Joint Note: Consideration from Two Persons.** Where a note was taken by husband and wife for borrowed money, a part of which was advanced by the wife for that purpose from her separate means, and the balance by the husband; it was *held* to be an estate by the entirety, and that the wife remained the full owner as survivor after the husband's death.

5. **HUSBAND AND WIFE: Trustee: Wife's Act.** If the husband takes the wife's separate money, without her consent, in writing, as provided by statute, and invests it in notes or real estate, taking the deed or the notes in the name of both, he does not hold by an estate in the entirety, but will be considered as a trustee for the amount of her money. But this rule does not prevent the wife performing the transaction herself so as to create such an estate.

Appeal from Johnson Circuit Court.—*Hon. Samuel Davis*, Judge.

REVERSED AND REMANDED (*with directions*).

*J. W. Suddath & Son* for defendant appellant.

(1) Joint tenancies existed at common law in both real and personal property. Johnston v. Johnston, 173 Mo. 118. (2) Joint tenancies as to real property were abolished except as to husband and wife by the statute, unless expressly and specifically declared to be a joint tenancy by the conveyance or instrument creating it. R. S. 1899, sec. 4800; R. S. 1909, sec. 2878. (3) "The modern rule of equity is certainly to defeat a joint tenancy whenever it is possible." Schooler, Personal Prop., sec. 156; Johnston v. Johnston, 173 Mo. 91, where the above is quoted with approval. (4) Tenancies by the entirety can only exist where there is a conveyance of a vested interest in the title of real property and did not exist in personal property at the common law. In re Albrecht, 136 N. Y. 91, 32 Am. St. Rep. 700; Polk's Admr. v. Allen, 19 Mo. 467; 1 Cooley's Blackstone Com., Book 2 (3 Ed.), p. 432. (5) An estate by the entirety is not a joint tenancy but rests upon the unity of husband and wife and hence is destroyed by divorce. Russell v. Russell, 122 Mo. 235. (6) By the Married Woman's Act of the unity of husband and wife is abolished and they are left as to personal property on the same footing as to each other as any other persons. Johnston v. Johnston, 173 Mo. 91; Armstrong v. Johnson, 93 Mo. App. 493; State ex rel.

v. Brady, 53 Mo. App. 202. (7) Under the present statutes a husband and wife can own personalty jointly, and in the absence of proof to the contrary they will be taken to be the joint owners of all personalty standing in the name of both and entitled to equal shares therein in the case of the death of either. State ex rel. v. Brady, 53 Mo. App. 203. (8) Husband and wife are presumed to be joint owners in equal shares of a deposit in the bank; but evidence may show it is all his or all hers without the right of either to claim any part as the survivor on the death of the other. Armstrong v. Johnson, 93 Mo. App. 492; State ex rel. v. Brady, 53 Mo. App. 202; Denigan v. San Francisco, 127 Cal. 142, 78 Am. St. 35, 59 Pac. 390. (9) Where note is payable to husband and wife, it may be shown in what proportion they furnished the funds and they will be declared to hold in the proportion the funds they furnished bear to the whole and this is true in case of death of either. Johnston v. Johnston, 173 Mo. 91, and authorities under point 8. (10) If a husband take a note for his own debt in the name of both husband and wife, it takes delivery to make a gift, and mere assuming of ownership of the instrument by placing it, among his own effects, it would seem, is sufficient to counteract the presumption raised and show it his property. Daniels on Neg. Insts., sec. 257; Schouler's Domestic Relations, 119. (11) Or the devising of it in his last will, will defeat the presumption and show it is not a gift. Pile v. Pile, 74 Tenn. 508, 40 Am. Rep. 50.

*M. D. Aber* and *O. L. Houts* for plaintiff appellant.

(1) Under the common law and under the law in this state real property acquired by husband and wife, vests in them a tenancy by entirety and in the survivor the whole estate, and no express declaration of such intention is necessary. R. S. 1899, sec. 4600; R. S. 1909,

sec. 2878; Garner v. Jones, 52 Mo. 68; Russell v. Russell, 122 Mo. 235; Bains v. Bullock, 129 Mo. 117; Wilson v. Frost, 186 Mo. 311; Frost v. Frost, 200 Mo. 474; Holmes v. Kansas City, 209 Mo. 513. The statute in this state intentionally emphasized the rule of the common law. Russell v. Russell, supra. It is said to be impossible by express words to convey land to husband and wife so as to make them tenants in common with each other. And courts that hold otherwise hold that an unmistakable intent to create a tenancy in common must be shown. Russell v. Russell, supra; Wilson v. Frost, supra. Married Women's Acts of 1875, 1883 and 1889 abolished the legal unity between husband and wife which gave rise to the estate by entirety; but the estate itself has not been abolished, but remains as at common law. Bains v. Bullock, supra. (2) Estates by entirety in husband and wife may be created in personal as well as in real property. All this property was vested in William E. Bradley and Julia A. Bradley, husband and wife, as an estate in entirety and inasmuch as she survived him it now belongs to her administrator. Arn v. Arn, 81 Mo. App. 133; Wells, Admr., v. Moore, 68 Mo. App. 499; Shields v. Stillman, 48 Mo. 82; Johnson v. Johnson, 173 Mo. 91; Boland v. McKowen, 189 Mass. 563, 76 N. E. 206.

ELLISON, J.—William E. Bradley and Julia A. Bradley were husband and wife, without children. They lived to an old age and died a few days apart, he on the 16th and she on the 29th of March, 1909. He left a will whereby he gave to Julia A. all of his personal property during her life. Defendant was appointed administrator of the estate. Upon Julia's death plaintiff, as public administrator, was put in charge of her estate, and he then brought this action to recover the following personal property claimed by defendant to belong to him as administrator of her deceased husband:

One note for $3600 payable to William E. and Julia Bradley, endorsed, interest paid to July 7th, 1908, $200 paid on principal.

One note for $2500 payable to William E. Bradley and Julia A. Bradley or either of them, interest paid to January 4th, 1909, $200 paid on principal.

Deposit in the Farmers and Commercial Bank in the name of William E. and Julia A. Bradley, $309.36.

Deposit in the Bank of Holden in the name of William E. and Julia A. Bradley, $181.10.

The action is based on the claim that the property thus held by these parties was an estate in the entirety and as such, upon the death of William, it became the sole property of Julia.

The evidence showed the note for $3600 was given as purchase price of a tract of realty owned by William and Julia as an estate by the entirety. That the note for $2500 was given to them for borrowed money and of that sum Julia contributed $1083.75, which was drawn by her from the bank out of her *separate* account, the remainder, $1416.25, was drawn by William by check on their joint account. The evidence further showed that the deposits which constituted the joint account were made by William and all checks on that account were drawn by him, with one exception when Julia drew $25.

The trial court found that plaintiff was entitled to the note for $3600, on the theory that besides being made payable to both, it was the proceeds of the sale of real estate held by entirety, and, as such, was the property of the surviving wife. The court further found that the note for $2500 was not held in entirety, but that plaintiff was entitled to $1083.75 of it on the ground that that was the sum Julia put in it. The court found for defendant as to the balance of that note, and also for both bank accounts. There were some other findings not necessary to notice, not being in dispute. Both parties appealed.

The defendant's complaint is that William owned one-half of the note for $3600 and that, therefore, he should have had judgment for one-half, instead of plaintiff for all of it. Plaintiff's complaint is that the finding should have been in his favor for all of the note for $2500, as well as all of the bank accounts, on the ground of an estate by the entirety in Julia, his intestate.

Defendant claims that while formerly there could be estates in entirety in personal property, such estates have been, in effect, abolished by the married woman's statutes which have been enacted in this state in recent years, which, in a property sense, disunite husband and wife. So that his full claim is that while the estate in entirety in lands has been preserved to husband and wife, such estate has been destroyed as to them in all personal property. The latter part of this claim is in direct conflict with the views of the Supreme Court. [Frost v. Frost, 200 Mo. 474; Bains v. Bullock, 129 Mo. 117.] In the latter case it was said that while the statute abolished the legal unity between husband and wife, which gave rise to estates by the entirety, it left the estate itself intact. In the former case it is said that the Married Woman's Statute did not have estates by entirety in view and did not intend any interference therewith, and that such estates had not been altered in any respect. And to the same effect, considering similar statutes, are the cases of Boland v. McRowen, 189 Mass. 563, and Pray v. Stebbins, 141 Mass. 219. Therefore estates by the entirety still existing as at common law, the case should be determined unaffected by the Married Woman's Statute.

The note for $3500 was not only payable to William and Julia, which alone was sufficient, but it arose from the sale of lands held by them in entirety. Undoubtedly it was an estate in entirety, and the trial court properly ruled that upon his death the full title remained in her.

Both bank accounts were made up of deposits by the husband alone, in the name of both. Whether these were held in entirety depends upon the intention. The mere direction of the husband to the bank to keep the account in their joint names is not conclusive, but it has a favorable bearing on the question in the wife's favor. Thus, if a husband buys land with his own money and takes title in his wife, it will be presumed he intended it to be a provision for her. And the same is true where he causes a note to be taken in her name. [Case v. Espenschied, 169 Mo. 215.]

We consider that the evidence and circumstances surrounding these persons, in connection with the presumption just stated, leave no doubt that it was the intention of the husband, and indeed the wife's also, that the survivor was to have the whole of the accounts. The case of Platt v. Grubb, 41 Hun 447, is much like the one before us, and it was there held that upon the death of the husband the wife took the whole account as survivor.

We have given much consideration to the note for $2500. We think it is not improper, ordinarily, in an estate of this kind to test one party's right by the right of the other. May we not say, by way of illustration, that a test of plaintiff's right, as representing the wife in the capacity of administrator of her estate, is the right the husband would have had in that note had he survived her? For the right to claim by reason of survivorship should be mutual; the right of each depends upon a corresponding right of the other; for, to be an estate by the entirety each must have an ownership in the whole of the estate. Therefore, if the husband could not rightly have claimed the whole of the note, had he survived his wife, she cannot claim it as his survivor. The ground stated as the reason why the husband could not have claimed it as an estate by the entirety, is that to allow such claim would be to annul the statute protecting the separate property

of married women, to which we have already referred. That statute is that in order that a husband may legally reduce his wife's personal property to his possession, she must give her express written consent. [Sec. 4340, R. S. 1899.]

But we think the husband made no effort to reduce to possession the wife's money which made up a part of that note. The facts show it to be a transaction of the wife's. She invested her money in the note in conjunction with her husband's money, and she, as well as he, had the note taken in the name of both so as to become an estate by the entirety. This, undoubtedly, she could legally do; for the statutory emancipation of married women, as regards their rights of property, enable them to deal with such property as though they were unmarried. Would the statute, therefore, have stood in the way of the husband's claim of an estate in the entirety had he survived the wife? Do not the facts disclosed in the record leave the statute without application? We do not intend to intimate a decision of a case not before us and only indulge in these suggestions by way of illustration.

But we conclude that, at least as to the wife's claim, which is here involved, the note was held as an estate by the entirety; and when William died, Julia remained the owner of the whole of it, and plaintiff, as her administrator, is now entitled to it.

There have been other grounds suggested to the effect that where the wife has advanced a part of the money for which a note is given to her and her husband, it is unjust to allow him the whole of it in case he outlives her. The same suggestion could, of course, be made were the positions of the parties reversed. Under the law, it seems there ought not to be given any weight to this suggestion. We cannot see how heed can be given to it without *destroying* estates by the entirety except in cases of devises or gifts. For if the considera-

153 App—38

tion given for the property is to be inquired into and each party is to get back the share he or she put in, there could not be an estate by the entirety. There are no words more antithetical than "share" and "entire." The law seems to be well settled that the fact of one of the parties advancing a part, or even all, of the consideration, will, not prevent the estate arising therefrom being one in entirety. In Shields v. Stillman, 48 Mo. 82, and Draper v. Jackson, 16 Mass. 480, the consideration for which a note was given to husband and wife was rent for the wife's separate property; and in Allen v. Tate, 58 Miss. 585, the consideration came from the husband. These are cited because immediately at hand; but all the cases on the subject show that the fact of one party or the other advancing all, or a part of, the consideration out of which the estate arose, does not influence its effect as an estate in the entirety. [See also Freeman on Cotenancy and Partition, sec. 68.] In Frost v. Frost, 200 Mo. 474, 478, *et seq.*, no question was made that land belonged to husband and wife by estate in entirety without regard to how much of the funds of either went into the purchase money.

The only ground where it can be said that the wife, or her heirs, could reach the estate claimed to be held by the entirety, for the amount of her money that went into it, would be in the supposition spoken of above, where the husband used her money for the purchase without her consent in writing as provided by the statute to which we have already referred. But, as we have seen, no such case is presented.

It is insisted that the case of Johnston v. Johnston, 173 Mo. 91, stands in the way of the views above expressed. There are some statements in the opinion in that case which cannot be reconciled with the case of Frost v. Frost, supra, and in all points of difference we must follow the latter. That case refused to allow an estate by the entirety in favor of the surviving husband in a note taken by him in name of himself and

wife where the wife's money made up a part of the consideration, and allowed the claim of her heirs, to the amount of her money. That conclusion is based on a statement of facts showing that an estate by the entirety was not intended, but, on the contrary, the note and mortgage were taken to secure to each party the sums they respectively advanced. Passing by the process whereby such intention was ascertained *aliunde* the note and mortgage, and not considering whether the right existed to find out intentions outside the terms of the papers in the absence of fraud or mistake, yet it will be observed that Judge MARSHALL laid stress on the terms of the note itself (see pp. 103, 104, of the report). But regardless of how the intention of the parties was ascertained, the fact remains that in that case it was considered that the parties did not intend that an estate by entirety should be the result of the transaction; and the decision there rendered was influenced, if not altogether controlled, by that consideration.

It must, however, be admitted that the learned judge, in discussing the law of the case, shows that his view is that where either husband or wife advance unequal portions of the consideration for a note, or purchase money of land, an estate by the entirety will not be created, but each will be separately interested in the deed or note to the amount contributed. This, it is stated, results from a growing aversion, or unfriendliness, of the courts to such estates. In proof of this, extended reference is made to many well known and highly respected authors. But on reading these it will be seen that they are discussing estates in *joint tenancy* and *have no reference at all* to estates by the entirety. There is no question but the text writers and opinions of judges have shown a disposition to avoid giving effect to joint tenancies on account of the frequent injustice of survivorship, and when the parties advanced unequal portions of the consideration, they were held not to have intended a joint tenancy with survivorship.

In Rigden v. Vallier, 2 Ves. Sr., 252, 258, the lord chancellor stated that: "It has been said indeed, that if two men make a purchase, they may be understood to purchase a kind of chance between themselves, which of them shall survive; but it has been determined, that if two purchase, and one advances more of the purchase money than the other, there shall be no survivorship, though there are not the words *equally to be divided,* or to hold as *tenants in common;* which shows, how strongly the court has leaned against survivorship, and created a tenancy in common by construction on the intent of the parties." The same thing, in effect, was again said in the same case, in 3 Atk. 731, 734. And in Patriche v. Powlet, 2 Atk. 54, it was said that: "A joint tenancy is undoubtedly no favorite of a court of equity, though otherwise at law." These, and other similar cases, are the foundation for the statements made by the text writers quoted at length in Johnston v. Johnston, but it is shown by the cases and by the subject under discussion by the text writers, that they were only referring to *joint tenancies* and not entireties. The prejudice against joint tenancies came, in great part, out of the injustice of the survivorship which was the result of such a tenancy; such as where two strangers held such an estate and one of them died, his interest went to the other by survivorship and his own next of kin were cut out. But no one is justified in saying that an estate by the entirety is looked upon by the courts with this disfavor. And the statements quoted in Johnston v. Johnston from 4 Kent, 360, as being on the latter subject, are said, two pages further on, not to apply to estates by entirety. This reason for aversion to estates in joint tenancy could rarely apply to estates by the entirety, between husband and wife, since the next of kin to either are, generally, their children.

Besides, as we have already intimated, the two estates are so fundamentally different in so many respects, that what is said of one ought not to be applied

to the other. The statute in this state, in recognition of this injustice, has abolished joint tenancies, with their incident of survivorship, but it has not touched estates by entirety; on the contrary, out of over-caution, estates to husband and wife are excepted by that statute.

But the law was the same (so far as estates by the entirety are concerned) before that exception was added; for it had been held that the statute abolishing joint tenancies did not apply to estates by entirety. [Gibson v. Zimmerman, 12 Mo. 385.] And in Hall v. Stephens, 65 Mo. 670, it was said the statute in adding the exception of husband and wife, only enacted what was already the law without its aid, and so the same was said of a similar condition in New York. [Bertles v. Nunan, 92 N. Y. 152, 157.]

As already shown, the antipathy to joint tenancies grew out of the resulting incident of survivorship; but, correctly speaking, there is no survivorship in estates by the entirety. The surviving party only remains possessed of the title he had from the beginning. Owners of the estate by entirety take *per tout et non per mi.* [Gibson v. Zimmerman, 12 Mo. 385; Garner v. Jones, 52 Mo. 68; Bertles v. Nunan, 92 N. Y. 152; Stelz v. Shreck, 128 N. Y. 263; Barber v. Harris, 15 Wend. 615.]

The true nature of estates by the entirety and the distinction between them and joint tenancies, is pointed out by Judge VALLIANT in Frost v. Frost, supra, and the statement is made that the case of Johnston v. Johnston, supra, is regarded as of that class where a husband uses his wife's money to purchase land, taking the title to himself; that being a fraud against which the law will grant relief.

The judgment will be reversed and the cause remanded that judgment may be entered for the plaintiff. All concur.