Note.—Reported in 203 N. W. 312. See, Headnote, American Key-Numbered Digest, Pleading, Key-No. 225(2), 31 Cyc. 354 (1926 Anno.).

---

## In re LOWER'S ESTATE.
### LOWER, Respondent, v. LOWER, Appellant.
#### (203 N. W. 312.)
(File No. 5788. Opinion filed April 6, 1925.)

1. **Husband and Wife—Common-law Disability of Wife to Hold Property Changed by Statute.**

   Common-law rule that husband and wife are in legal contempaltion one person, that husband is that person, and that legal existence of wife to hold property is suspended, has been changed by Rev. Code 1919, Sec. 174.

2. **Husband and Wife—Tenants in Common—Certificates of Deposit, Payable to Decedent or His Wife, Held Not to Create Joint Tenancy, with Right of Survivorship.**

   Under Rev. Code 1919, Secs. 268, 269, 271, 272, certificates of deposit, payable to decedent or his wife, of which decedent retained control until his death, did not create joint tenancy, with right of survivorship, in absence of express declaration therein to that effect, but at most created tenancy in common.

3.   Gifts—Delivery—Delivery to Donee Necessary to Validity of Gift.
     Delivery to donee is necessary to validity of gift of any kind.
        Dillon, J., dissenting.

Appeal from Circuit Court, Faulk County; Hon. J. H. Bottum, Judge.

Action by Roy E. Lower against Hettie Lower, administratrix. From a judgment for petitioner, and from an order denying her motion for a new trial, defendant appeals. Affirmed.

See, also, 199 N. W. 199, 47 S. D. 458.

*Campbell & Fletcher,* of Aberdeen, for Appellant.

*F. E. Snider,* of Faulkton, for Respondent.

(2)   To point two of the opinion, Appellant cited: West v. McCullough (N. Y.), L. R A. 1917C, 536; Smith v. Haire, 181 S. W. 161, Ann. Cas. 1916D, 529; Metropolitan Savings Bank v. Murphy (Md.), 31 L. R. A. 454; Whitehead v. Smith (R. I.), 32 Atl. 168; Craige v. Bradley (Mo.), 134 S. W. 1081.

Respondent cited: O'Gorman v. Jolley (S. D.), 147 N. W. 78.

SKINNER, Circuit Judge. In this action the petitioner and respondent, Roy E. Lower, seeks to have the administratrix and appellant, Hettie Lower, inventory certain certificates of deposit as a part of the estate of W. H. Lower, deceased, who was her husband. The county court of Faulk county by its order found for the administratrix, and to the effect that the certificates of deposit which will be hereinafter described did not belong to the estate of said W. H. Lower, deceased, but that said certificates were the separate property of Hettie Lower, and in no manner liable to administration as the property of said decedent. From this order the petitioner and respondent appealed to the circuit court of Faulk county, and findings of fact and conclusions of law were made by said court, and judgment was rendered in favor of the petitioner, and from that judgment and an order denying a motion for a new trial the administratrix and appellant has appealed to this court.

The circuit court of Faulk county found that the State Bank of Seneca, a banking corporation of Seneca, S. D., during the months of December, 1920, and January, 1921, issued and delivered to W. H. Lower its certain certificates of deposits, as fol-

lows:  No. 1,067, in the sum of $500; No. 1,097, in the sum of $2,000; No. 1,098, in the sum of $2,000; No. 1,099, in the sum of $2,000; No. 1,100, in the sum of $1,500.  And except as to dates, number, and amounts the said certificates were identical in words and were in the following words, letters, and figures, to wit:

"Seneca, So. Dak., ———, 192—.  No. ———.

"This certifies that W. H. Lower has deposited with the State Bank of Seneca $———, ——— dollars, payable to the order of himself or Mrs. W. H. Lower in current funds on the return of this certificate properly indorsed 6—12 months after date, with interest at 6 per cent per annum for time specified only.

"J. E. Morgan, Cashier."

The court further found that in January, 1921, the Farmers' Security Bank, a banking corporation of Seneca, S. D., duly issued and delivered to W. H. Lower its six certain certificates of deposit as follows:  No. 1,607, for $1,000; No. 1,608, for $1,000; No. 1,609, for $1,000; No. 1,610, for $1,000; No. 1,611, for $800; and No. 1,612, for $500.  And except as to numbers and amounts said certificates were identical as to form and were in letters and figures, to wit:

"Farmers' Security Bank.                              No. ———.

Seneca, S. Dak., Jan. 6, 1921.  $———.

"W. H. Lower has deposited in this bank ——— dollars payable to the order of self or Mrs. W. H. Lower in current funds, upon the return of this certificate properly indorsed, with interest at the rate per annum of ——— per cent, if left six months, or 6 per cent, if left until September 1, 1921.

"Not subject to check.

"No interest after maturity.

"Leo A. Travers, Cashier."

The court further found that each of said certificates of deposit so issued by said bank was at the time of the issuance thereof duly delivered to the said W. H. Lower, and remained in his possession at all times thereafter until the time of his death, and were at the time of his death in his possession; that said W. H. Lower departed this life about the 10th of May, 1921, intestate, leaving surviving him, as his sole heirs at law, his widow, Hettie Lower, the appellant herein, his son Roy Lower, the petitioner

herein, his son Madison Lower, and a daughter, Nellie Taylor; that thereafter, upon due and proper petition, Hettie Lower was duly appointed administratrix of the estate of W. H. Lower, deceased, by the county court of Faulk county, and duly qualified; that thereafter, between the 19th day of May, 1921, and the 28th day of October, 1921, the said Hettie Lower presented said certificates to the bank upon which they were drawn and received the principal or face of said certificates, together with interest thereon accrued; and that the appellant has failed and refused to inventory said certificates of deposit, and failed to account for the same as any part of the estate, and claims the same as her own separate property.

The court as a matter of law concludes that at the time of the death of said W. H. Lower the certificates of deposit hereinbefore referred to were the sole and exclusive property of the said W. H. Lower, and that said appellant, Hettie Lower, who is designated in the certificates as Mrs. W. H. Lower, had no right, title, or interest therein, except as the heir of the said W. H. Lower, deceased, and that said certificates of deposit and the proceeds thereof were and are a part of the estate of the said decedent, and that said petitioner is entitled to judgmnt wherein it shall be ordered and adjudged that the said appellant inventory the said certificates of deposit as a part of the estate of W. H. Lower, deceased, and judgment was rendered and entered by the said court in accordance with said conclusions of law.

The cashier of the Farmers' Security Bank of Seneca testified as follows:

"About a year or so before his death, Mr. Lower came into the bank of which I am cashier, and stated to me that he wanted what money he had on hand so deposited in interest-bearing certificates of deposit that either he, the said W. H. Lower, or his wife, Mrs. W. H. Lower, could get the cash upon the certificates of deposit, in case the other one should die. He also made the statement to me: 'The old woman helped earn it, and it belongs to her as well as to me.' I thereupon made out the certificates of deposit in the manner in which they appear in the findings of fact and conclusions of law, in the various amounts in which Mr. Lower from time to time made deposits. These certificates, after their execution, were left with me by Mr. Lower, and were kept

in the safe in the bank.   Mr. Lower came into the bank and renewed them from time to time, as they became due, but never took them away from the bank.   So far as I know, the certificates were never taken away from the bank, after they were first made out in accordance with the instructions of Mr. Lower, but he was never denied access to them when he wanted to examine them for any purpose.   After the death of Mr. Lower, Mrs. Lower came into the bank and cashed the certificates and renewed them in her own name."

The president of the Farmers' Security Bank of Seneca testified as follows:

"I do not know exactly when Mr. Lower came into the bank and told me that he wanted his money fixed so that, in case anything should happen to him, his wife could get it.   I proposed making out certificates of deposit payable to him or Mrs. W. H. Lower, and he instructed that these various certificates of deposit be made.   He also made the statement to me at one time that Mrs. Lower helped him earn the money, and it was hers as well as his, and he wanted it fixed so that in case anything happened to him, Mrs. Lower could get the money.   These certificates were made out in accordance with his instructions, and were left at the bank, and he renewed them from time to time as they became due."

The cashier of the State Bank of Seneca testified as follows:

"I remember of the occasion when Mr. Lower first made a deposit of money in the State Bank of Seneca, by which he stated that he wanted the deposit made in this way, so that in case he should die Mrs. Lower could get the money.   The certificates were made out in the form set out in the findings of fact and conclusions of law filed herein, and were placed in the bank for safekeeping.   Mr. Lower did not relinquish control of these certificates, but came in from time to time and renewed them and they were placed in his possession at any time when he asked for them, during his lifetime.   After his death, they were delivered to Mrs. Lower, who cashed them, and renewed them in her own name."

Mr. H. L. Paul testified as follows:

"I am the station agent at Highmore, S. D.; prior to about a year ago I held the same position at Seneca, S. D., and was very well acquainted with the entire Lower family.   I was very inti-

mately acquainted with Mr. W. H. Lower before his death. He suffered his first stroke at my house, and he told me that he wanted to get home before he died to settle up his estate in such shape his family would not be put to any expense or trouble later on, as he felt sure that he would die soon. However, he lived for quite a long time after this, and I talked the matter over with him some time later on, and he told me that he had everything fixed; stated that his money was on certificates of deposit in the bank at Seneca, so that Mrs. Lower could get the cash after his death. He said that Mr. Dixon had the deeds and necessary papers to take care of everything when the time came, and that he was sure they were all in order."

Nellie Taylor testified as follows:

"I am a daughter of W. H. Lower, deceased. At one time I heard my father tell me that he had made his certificates of deposit over to mother. He told me that once in the home in Seneca, and once out on our farm. I don't just remember the exact date."

The above is the substance of the testimony set out in appellant's brief. It is the contention of the appellant that under the facts and circumstances shown by the testimony in this case it was the intention of the decedent, W. H. Lower, to create his wife, Mrs. Lower, a joint owner of the certificates of deposit involved herein, and that at the time of his death she was such joint owner therein. And upon the death of the husband she acquired the entire interest by right of survivorship. On the other hand, it is the contention of the respondent that Mrs. Lower never had any interest in her own right in any part of the fund represented by the certificates, and that the actions and dealings of Mr. Lower with the certificates was an attempted testamentary disposition of said property.

[1] It is clear from the evidence that W. H. Lower, the deceased, had control of the certificates of deposit at all times up to the date of his death, and that it was his intention to so control said certificates, and that he did not intend his wife, Hettie Lower, to get the money represented by said certificates until after his death, and that Mrs. Lower never did have possession of said certificates of deposit until after Mr. Lower died. As common law husband and wife are in legal contemplation one person, and

the husband is that person; the legal existence of the wife is considered suspended and merged in the husband.   30 C. J. 507.   All the disabilities under which the wife labored under the common law have been removed by our statute, and under section 174, Rev. Code 1919, husband and wife may hold real or personal property together as joint tenants or tenants in common, and the wife may without the consent of the husband convey her property, and as to property rights they appear to stand upon an equal footing.

[2]   Under chapter 3 (headed "Interests in Property") of part I of division 3 of title I of the 1919 Code are the following sections on the interests and ownership of property:

"Sec. 268.   *Ownership by Several.*   The ownership of property by several persons is either:

"I.   Of joint interests;

"2.   Of partnership interests; or,

"3.   Of interests in common.

"Sec. 269.   *Joint Tenancy.*   A joint interest is one owned by several persons in equal shares, by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy, or when granted or devised to executors or trustees as joint tenants."

"Sec. 271.   *Tenancy in Common.*   An interest in common is one owned by several persons not in joint ownership or partnership.

Sec. 272.   *Definition of Tenancy in Common.*   Every interest created in favor of several persons in their own right is an interest in common unless acquired by them in partnership for partnership purposes, or unless declared in its creation to be a joint interest, as provided in the section defining joint interest."

The foregoing sections refer to property in general, and not to real property alone.   "To create a joint tenancy there must coexist four unities:  (1) Unity of interest;  (2) unity of title; (3) unity of time; (4) unity of possession; that is, each of the owners must have one and the same interest, conveyed by the same act or instrument, to vest at one and the same time, except in cases of uses and executory devises, and each must have the entire possession of every parcel of the property held in joint tenancy as well as of the whole."   23 Cyc. 483.

If we concede that Hettie Lower acquired any interest in the certificates of deposit hereinbefore mentioned by reason of the fact that the certificates were made payable to W. H. Lower or herself, their title would not be created by a single transfer, as required by the above section of the Code defining joint tenancy, and there is nothing in the transfer of the property, conceding it was a transfer, expressly declaring the same to be a joint tenancy, and in the absence of such an express declaration in the transfer, conceding that she acquired title, it would only be an interest in common with her husband in the certificates, and the right of survivorship could not exist. The Supreme Court of California in the case of Denigan v. San Francisco Sav. Union, 127 Cal. 142, 59 P. 390, 17 Am. St. Rep. 35, says:

"Section 683, Civ. Code, declares: 'A joint interest is one owned by several persons in equal shares by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy, or when granted or devised to executors or trustees as joint tenants.' The proposition of the respondent that this section applies only to real estate is without support. There is no limitation of this character in the section, and, as it is found in the title headed 'Ownership' and the chapter thereof which treats of 'Interests in Property," irrespective of its character, it must be held applicable to all kinds of property. The money deposited by Ellen was up to that time her separate property, and it cannot be said that she had acquired any interest therein; and, if it could be assumed that by reason of the form in which the deposit was made Francis acquired any interest therein, it was acquired at a different time and by a different title from that of Ellen. There was no declaration that the money should be held in joint tenancy, and the words, 'payable to either,' placed in the account, take away the claim of a joint interest. In Gorman v. Gorman, supra, the entry of the deposit made in the book was 'Theresa McConnel and her niece, Maggie S. Gorman, joint owners, payable to the order of either or the survivor.' The money was the individual property of Theresa, and the account was changed upon the books of the bank into this form at her request, and the entry was signed by her and Miss Gorman. The court held that, although the words 'joint owners' were employed, the deposit did not become the joint property of both. In Taylor

v. Henry, supra, the court refused to sustain the claim of the sister by virtue of her survivorship, upon the ground that the gift was not perfect and irrevocable during the life of the donor. The same rule was observed in Milholland v. Whalen (Md.), 43 A. 43, 44 L. R. A. 205."

In the foregoing case it is held, where a wife deposited money, her separate property, in a bank, the account being opened in the names of the husband and wife, payable to either, that that fact alone would not import a gift to the husband, and, there being no evidence tending to show a purpose or intention on the wife's part to pass the title, would not give the husband a joint interest in the deposit so as to enable him, as survivor, to maintain a claim against the wife's administrator.

It will be noted that the statute of California relative to joint tenancy is identical with the statute of this state, and that the court therein holds that those sections are applicable to personal property as well as to real property. It would therefore seem that the ownership of property by several persons in this state would be of three classes, joint interest, partnership interests, and interests in common, and that a joint interest must be created in the manner required by statute, or it does not exist, and if there was not a joint interest there would not be the right of survivorship. In the California case cited above the deposit was on open account, while in this case the deposit was in the form of certificates of deposit, which were delivered to the husband, retained in his possession, and so far as the evidence discloses the wife knew nothing about them.

[3] If these certificates of deposit in question had been delivered to Hettie Lower by her husband during his lifetime, there is no question but that she could have indorsed the certificates and collected the money on them, as the bank was authorized to pay the money to either one of the parties named in the certificates. If the husband had delivered the certificates of deposit to the wife during his lifetime, with intent to pass the title of the same to her, a very different question would have been presented, for in that case it would have been a gift intervivos; but as there was no delivery there could be no gift, for to constitute a valid gift of any kind there must be a delivery of the property to the donee. In O'Gorman v. Jolley, 34 S. D. 26, 147 N. W 78, the court say:

"Gifts are said to be of five kinds: First, absolute to the donee; second, to one for delivery to another; third, to one as a trustee; fourth, inter vivos; and, fifth, causa mortis. Flaherty v. O'Conner, 24 R. I. 587, 54 A. 376. To constitute a valid gift of either kind, there must be delivery of the property to the donee. A gift is said to be a contract executed. The act of execution is the delivery of possession. Without delivery it is only a contract to give, and not binding for want of a consideration. Scott v. Lauman, 104 P. 593; Clapper v. Frederick, 199 Pa. 609, 49 A. 218; Crouse v. Judson, 41 Misc. Rep. 338, 84 N. Y. S. 755; Commonwealth v. Williams, 6 Gray (72 Mass.) 1; Spooner's Adm'r v. Hilbishs ex rel., 92 Va. 333, 23 S. E. 751; Appeal of Colburn, 74 Conn. 463, 61 A. 139, 92 Am. St. Rep. 231. As the act of execution is delivery of possession, it is said to be of the essence of the title. In re Schiehl's Estate, 179 Pa. 308, 36 A. 181; In re Campbell's Estate, 7 Pa. 100, 47 Am. Dec. 503. Delivery is essential, whether the gift be inter vivos or causa mortis. Without legal delivery, the title does not pass. Dickershied v. Exchange Bank, 28 W. Va. 340."

Counsel for appellant seems to rely upon the case of West v. McCullough, 123 App. Div. 846, 108 N. Y. S. 493, as sustaining his contention. This case is referred to in Ann. Cas. 1916D, on page 522, under the heading "Joint Deposit as Creating Joint Tenancy." The author makes this statement:

"In New York, by a statute, a joint deposit or a deposit in the alterative but payable to the survivor creates a joint ownership and a right of survivorship"—citing West v. McCullough, and other cases.

We have no such statute in this state. Counsel for appellant also cites Dupont v. Jonet, 165 Wis. 554, 162 N. W. 664. In that case the husband surrendered certain deposit certificates to his bank and took new certificates therefor in the name of both himself and his wife, payable to either, one reading that it was payable to the survivor, and the court therein held:

"It is admitted that the possession of the certificates after their delivery was joint; that is, they were kept in a box at the home of the parties where they were accessible to both or either at any time. This in our judgment makes the gift complete."

In this case we have no evidence of any such delivery or possession of the certificates by the wife. We think that much that has been said in the case of O'Gorman v. Jolley, supra, is applicable to this case, and it would unnecessarily prolong this opinion to set out herein any further quotation therefrom. We are compelled to conclude that the appellant Hettie Lower never had any title or right to the possession of the certificates of deposit in question, and that they therefore belong to the estate of her deceased husband, and that she should account for the proceeds of said certificates as a part of the property of this estate.

We have not overlooked the case of Kennedy v. Kennedy, 169 Cal. 287, 146 P. 648, Ann. Cas. 1916D, 515, or the case of In re Harris, 169 Cal. 725, 147 P. 968, but in each of these cases there were written agreements entered into by the parties making the deposits to the effect that such deposits should be the joint property of each of the persons interested, and the court held that a joint interest in the deposit could be created in that way.

The judgment of the circuit court and the order overruling appellant's motion for a new trial are affirmed.

SKINNER, Circuit Judge, sitting in lieu of ANDERSON, J., disqualified.

CAMPBELL, J., not sitting.

DILLON, J. (dissenting). The banks issued the certificates of deposit to W. H. Lower or Mrs. W. H. Lower. The intention in so doing was that the money should be paid by the banks to W. H. Lower or Mrs. W. H. Lower, and as such they became the joint owners of these certificates, thus conferring on the husband and wife the right of receiving the joint funds. The issuing of these certificates by the bank could have no other meaning, and must be construed as the intention to pay to either of them by the right of survivorship. The husband must have presumed to have intended to benefit his wife by making the deposits in this manner, and this presumption must be held in absence of other proof. His intention in taking out these certificates was made manifest when Mr. Lower said he "wanted it fixed so that the old lady could get the money in case of his death; she had helped him earn it, and it was hers as much as it was his."

Our statute recognizes a joint tenancy without delivery, and

this rule should now be adhered to. The creating of such a tenancy could only mean that the money on deposit should be held by this tenure. By so doing the parties were 'seeking to carry into effect such contract as was made. As stated by Judge Winslow in Dupont v. Jonet, 165 Wis. 560, 162 N. W. 666:

"No reason is perceived why a husband may not deposit money in a bank and take a certificate therefor in the name of both himself and his wife, payable to either, and thus make a gift to her of an undivided interest in the fund and create a tenancy by entireties therein."

The banks paid these certificates in accordance with the terms stated. Mrs. Lower received the money she was entitled to under the joint ownership of these certificates. The position maintained by appellant is amply illustrated by the following cases: West v. McCullough (N. Y.), cited in note, L. R. A. 1917C, 563; Smith v. Haire (Tenn.), 181 S. W. 161; Johnson v. Lusk, 6 Cold. (Tenn.) 113, 98 Am. Dec. 401; McMillan v. Mason et al, 5 Cold. (Tenn.) 362, 98 Am. Dec. 401; 21 Cyc. 1197; 21 Cyc. 1188; Metropolitan Savings Bank v. Murphy, 82 Md. 314, 33 A. 640, 31 L. R. A. 454, 51 Am. St. Rep. 473; Craige v. Bardley, 153 Mo. App. 586, 134 S. W. 1081; Augsbury v. Shurtliff, 180 N. Y. 138, 72 N. E. 927; Lowery v. Erskine, 113 N. Y. 52, 20 N. E. 588; Blick v. Cockins, 252 Pa. 56, 97 A. 125; In re Albrecht, 136 N. Y. 91, 92 N. E. 632, 18 L. R. A. 329, 32 Am. St. Rep. 700; Kennedy v. McMurray, 169 Cal. 287, 146 P. 647, Ann. Cas. 1916D, 515; In re Harris, 169 Cal. 725, 147 P. 967.

Note.—Reported in 203 N. W. 312. See, Headnote (1), American Key-Numbered Digest, Husband and wife, Key-No. 57, 30 C. J. Sec. 7; (2) Husband and wife, Key-No. 14(5), 30 C. J. Sec. 107; Joint tenancy, 33 C. J. Secs. 3, 9; (3) Gifts, Key-No. 18(1), 28 C. J. Secs. 21, 103.